EL PUEBLO DE PUERTO RICO, representado por el Comisionado de lo Interior Interino, JESÚS BENÍTEZ CASTAÑO, demandante, apelante y apelado, *v.* SOCIEDAD AGRÍCOLA MARIO MERCADO E HIJOS ET AL., demandados y apelados; ARTURO PICÓ SANTIAGO, demandado, apelado y apelante.

Núm. 10441.—*Sometido:* Mayo 8, 1951. *Resuelto:* Agosto 13, 1951.

794

*Hon. Procurador General Víctor Gutiérrez Franqui, Clemente Pérez Martínez, Jesús Zequeira* y *Alejandro Romanace, Procuradores Generales Auxiliares,* abogados del apelante apelado; *Córdova & González* y *Alberto Picó,* abogados del apelado apelante.

EL JUEZ PRESIDENTE INTERINO SEÑOR TODD, JR., emitió la opinión del tribunal.

El día 20 de junio de 1947 se radicó ante la Corte de Distrito de Ponce la demanda en este caso acompañada de una declaración sobre adquisición y entrega material de la propiedad expropiada. Aun cuando la demanda iba dirigida contra numerosos demandados, el recurso ante nos sólo entraña al demandado y aquí apelante Arturo Picó Santiago, a quien se expropió una parcela de terreno con cabida de 1.56 cuerdas, equivalentes a 6143.7889 metros cuadrados a segregarse de una finca de 6.97 cuerdas. Sobre la parcela expropiada enclavaban cuatro edificaciones en las que el apelante tenía instalada una industria de fabricación de bloques de cemento y el demandante consignó la suma de $16,568.76 como compensación al demandado, tanto por la parcela como por las edificaciones.

El mismo día en que se radicó la demanda la corte dictó resolución invistiendo el título de dominio sobre las fincas objeto del procedimiento en El Pueblo de Puerto Rico y ordenando a los demandados hicieran entrega de la posesión material de las mismas dentro de un término no mayor de veinte días a partir de la fecha de ser notificados de dicha resolución. En cuanto al demandado Arturo Picó Santiago, no fué hasta el 5 de enero de 1948 que se le emplazó, notificándosele con copia de la demanda, de la declaración de adquisición y de la resolución sobre entrega material de la po-

sesión. Esto no obstante, y por los motivos que más adelante se harán constar, no fué hasta el 30 de junio de 1949 que el demandado Picó desalojó la parcela que le había sido expropiada.

Al contestar la demanda el demandado alegó que la parcela y edificios expropiados tenían un valor de $40,010.68 y además, que con motivo de la construcción de la vía pública llamada "Ponce By-Pass" a que se dedicarían los terrenos objeto de la expropiación, sufrió daños y perjuicios ascendentes a $10,500.

Al crearse por la Ley núm. 223 de 15 de mayo de 1948 ((1) pág. 775) el Tribunal de Expropiaciones de Puerto Rico, este caso fué trasladado a dicho tribunal y visto ante el mismo. Mediante estipulación de las partes, aprobada por la corte, se acordó que las edificaciones expropiadas tenían un valor de $14,893.75, y de acuerdo con la prueba presentada en el juicio celebrado, dicho tribunal dictó sentencia declarando con lugar la demanda y fijando en definitiva el valor de la propiedad expropiada en $24,885.43, debiendo, por tanto, el demandante pagar al demandado la suma de $8,316.67 más intereses legales desde el 1ro. de julio de 1949, o sea desde un día después de haber el demandado abandonado la propiedad.

Ambas partes apelaron. Pasamos a considerar el recurso interpuesto por El Pueblo de Puerto Rico y al hacerlo quedarán resueltos también algunos de los errores señalados por el demandado en el suyo.

■■ En primer término sostiene el demandante que el tribunal a quo erró al conceder al demandado $600 en pago de los gastos en que incurrió en la remoción de las maquinarias de fabricar bloques que existían en la parcela expropiada. En cuanto al monto de esta partida no hay discusión pues las partes estipularon que, de proceder su concesión, el demandado había incurrido en dicha erogación.

El tribunal inferior hizo constar en sus conclusiones de derecho que la cuestión envuelta ofrecía bastantes dudas ya

que en los tribunales federales y estatales no se ha establecido una doctrina uniforme y este Tribunal no ha tenido oportunidad de expresar opinión. Resolvió, sin embargo, que sin necesidad de afirmar cuál es o debe ser la doctrina legal aplicable, en el caso de autos, "las maquinarias estaban adheridas al suelo de los edificios y para remover dichas maquinarias habría que romper algunas paredes. Todas las circunstancias nos llevan a la conclusión que estas maquinarias eran bienes inmuebles. Y como las mismas no fueron expropiadas, lo justo y sensato, a nuestro entender, es que el demandante pague el costo de sacar esas maquinarias de la propiedad inmueble que expropia. Si en ciertos casos procede que el demandante pague daños por segregación, o sea, el daño o la depreciación que sufre el resto de un bien inmueble cuando por expropiación se ha segregado una parte del mismo, no vemos cómo en este caso podría defenderse la inmunidad de parte del Gobierno para segregar parte de un bien inmueble (el edificio) sin compensar, por lo menos, el gasto que tiene el dueño en sacar la otra parte del bien inmueble (las maquinarias) para utilizarlas en otro sitio."

A nuestro juicio no erró el tribunal a quo al resolver que las maquinarias de la fábrica de bloques, por la forma en que se probó estaban adheridas a uno de los edificios expropiados, constituían bienes inmuebles. Dispone el inciso 3 del artículo 263 del Código Civil; ed. de 1930, que son bienes inmuebles: "Todo lo que esté unido a un inmueble de una manera fija, de suerte que no pueda separarse de él *sin quebrantamiento de la materia* o deterioro del objeto", y el inciso 5 del mismo artículo: "Las *máquinas*, vasos, instrumentos o utensilios *destinados por el propietario de la finca a la industria o explotación que se realice en un edificio* o heredad, y que directamente concurran a satisfacer las necesidades de la explotación misma." (Bastardillas nuestras.)

La prueba demostró, además, que para poder remover las máquinas había que destruir el edificio donde estaban enclavadas y que para hacerlo el demandado obtuvo permiso del

Comisionado de lo Interior Auxiliar para destruir, por su cuenta, todos los edificios expropiados, obligándose además a remover los escombros a cambio del material que pudiera obtener de los mismos—véase *exhibit* 4 del demandado, cartas de mayo 7, 1949 y junio 9, 1949—y que en efecto, el demandado procedió a su demolición.

La cuestión a determinar es si bajo estas circunstancias el demandante venía obligado a pagar por los gastos en que incurrió el demandado al remover las máquinarias de su fábrica para instalarlas en otra parte de su finca en una nueva edificación que hizo.

Arguye el demandante que la justa compensación por las propiedades expropiadas a que hace referencia el artículo 2 de la Ley Orgánica, (1) sólo debe incluir su valor razonable en el mercado, de acuerdo con el artículo 2 de la Ley núm. 479, "Para evitar la especulación en la venta de bienes raíces a El Pueblo de Puerto Rico y sus agencias e instrumentalidades para fines de utilidad pública o beneficio social; fijar normas para la justa y razonable indemnización del propietario en caso de expropiación forzosa, y para otros fines", aprobada el 26 de abril de 1946 ( (1) pág. 1403). (2)

(1) Dicho artículo, en su párrafo 9, dispone que "La propiedad particular no será tomada ni perjudicada para uso público, a no ser mediante el pago de una justa compensación fijada en la forma provista por ley."

(2) El artículo 2 dispone lo siguiente:

"En el caso de compra o expropiación forzosa de la propiedad particular para fines de utilidad pública o beneficio social, la indemnización deberá basarse en el valor razonable en el mercado de tal propiedad sin incluir incremento alguno por razón de espectativa fundada y razonable de que la propiedad adquirida, u otra propiedad similar a la misma, o que se encontrara dentro de la localidad en que estuviera aquélla situada, se requiera o se haya de requerir para uso público o beneficio social, o fuere necesaria para algún uso que tan sólo pudiere darle El Pueblo de Puerto Rico o cualquier agencia o instrumentalidad del mismo con poderes para la expropiación forzosa de la propiedad particular.

"En el caso de venta o expropiación forzosa de la propiedad particular a que se refiere el párrafo anterior, la indemnización tampoco incluirá aumento alguno por razón de mejoras públicas o inversiones que haya llevado en la localidad El Pueblo de Puerto Rico a través de cualquiera de sus departamentos ejecutivos, agencias o instrumentalidades."

La limitación incluída en el artículo 2 de la Ley núm. 479 no tiene ni puede tener el alcance que quiere darle el demandante ante la disposición del artículo 2 de la Carta Orgánica que incluye, no sólo la justa compensación por la propiedad expropiada sino también la justa compensación por los perjuicios causados a la propiedad del expropiado como consecuencia de la expropiación. Ya así lo resolvimos en el caso de *Pueblo* v. *García*, 66 D.P.R. 504, haciendo resaltar el hecho de que la frase "ni perjudicada" contenida en nuestra Carta Orgánica no existe en la Constitución federal. De ahí que los casos federales que cita el demandante y en los cuales sólo está envuelta la expropiación (*taking*) de los terrenos, sin incluir maquinarias, mejoras, etc., no sean de aplicación a los hechos del presente.

En situaciones como las que existen en el presente caso, tanto en la jurisdicción federal como en la estatal, se ha resuelto que cuando la mejora está adherida al inmueble expropiado debe concederse indemnización por el costo de su remoción, bajo la teoría de una expropiación parcial (*partial taking*). Véanse *Potomac Electric Power Co.* v. *United States*, 85 F.2d 243; *United States* v. *Becktold Co.*, 129 F.2d 473; *Des Moines West Wash Laundry* v. *City of Des Moines*, 198 N.W. 486; *In re Gratiot Ave., City of Detroit*, 293 N.W. 755; *City of St. Louis* v. *St. Louis, I. M. & S. Ry. Co.*, 182 S.W. 750; y· véase además *Developments in the Law—Damages*, 61 Harv. L. Rev. 113, 178–79, donde se dice: "Otro elemento de pérdida confrontado frecuentemente es el costo de remover equipo y existencias. Cuando la constitución del estado permite recobrar por la 'expropiación' (*taking*) únicamente, la compensación por estos gastos es uniformemente denegada por las cortes. Pero, sin embargo, si una mejora ha sido adherida al inmueble, los gastos de remoción son concedidos bajo la teoría de una expropiación parcial (*partial taking*), ya que el valor de lo que queda sin expropiar se determina por su costo emplazado menos el costo de su remoción. Y algunas cortes han sido indulgentes al aplicar la ley sobre

'*fixtures*' con el fin de conceder el recobro de gastos de remoción bajo esta teoría."

Cualquier duda que pudiera haber en cuanto a si la maquinaria en el presente caso formaba parte del inmueble expropiado se disipa por la admisión expresa del demandante de que no podía removerse la maquinaria del edificio expropiado sin que éste fuera demolido y su concesión escrita para que el demandado procediera por su cuenta a demolerlo. Es obvio que la maquinaria no podía continuar en la propiedad expropiada pues ésta había de utilizarse para una nueva carretera. Es más, uno de los errores señalados por el demandante es el no haberle concedido la corte una suma por el uso de la propiedad expropiada por el demandado durante todo el tiempo que tardó en remover las maquinarias y enseres de su fábrica de bloques y hacer entrega de la propiedad. Es de rechazarse, además, la contención del demandante de que de concederse la partida de gastos por remoción también habría de concederse otra por las pérdidas habidas en el negocio con motivo de su interrupción. Tal partida, si alguna vez fué reclamada por el demandado, expresamente la renunció en la conferencia anterior al juicio. (T.E. pág. 17.)

Dadas las circunstancias concurrentes consideramos que no erró el tribunal inferior al conceder la partida de $600 para gastos de remoción.

■■ El segundo señalamiento es al efecto de que erró el tribunal al resolver que el demandado no tenía que pagar una compensación razonable al demandante por el uso y disfrute de la propiedad expropiada durante dos años[3] y al no fijar la compensación por ese uso.

En relación con este error consideraremos el señalado por el demandado en su recurso al efecto de que erró el tribunal

---

[3] De acuerdo con la teoría del demandante aceptada por el demandado de que es desde la fecha en que venció el plazo concedido al demandado sería un año cinco meses pues el demandado fué emplazado el 5 de enero de 1945 y se le concedieron 20 días para entregar la posesión, o sea hasta el 25 de enero de 1948 y desalojó la propiedad el 30 de junio de 1949.

al negarse a conceder intereses sobre el importe de la senten-
cia desde la fecha de la adquisición hasta el 30 de junio de
1949.

Al resolver estos puntos el tribunal a quo se expresó en
esta forma:

"Después de analizar toda la prueba practicada con relación
a este aspecto del caso, hemos llegado a la conclusión que hubo
un consentimiento expreso por parte del demandante para que
el demandado siguiera ocupando estos terrenos hasta el 30 de
junio de 1949, fecha en que el demandado desalojó totalmente
la parcela expropiada. No tenemos duda alguna que el deman-
dado ocupó esta propiedad todo ese tiempo de buena fe y para
conveniencia y beneficio en cierto sentido del demandante, quien
no iba a utilizar de inmediato esas propiedades, ya que el trozo
de carretera por ese sitio no ha sido comenzado aún. De haber
abandonado el demandado esos terrenos, hubiese acarreado al
demandante gastos de vigilancia para evitar que se construyeran
clandestinamente casas en esos terrenos.

"Los abogados de las partes han hecho un esfuerzo para ilus-
trar al Tribunal con relación a sus respectivas teorías.

"La verdad es que en el caso específico que nos ocupa, no te-
nemos necesidad de determinar la doctrina legal que debe pre-
valecer en Puerto Rico sobre el valor del uso de propiedad expro-
piada, ya que aquí concurren dos circunstancias especiales.
Esto es, el demandado actuó de buena fe y con el consentimiento
del demandante. Tampoco tenemos en este caso que penetrar
en la legalidad del permiso concedídole al demandado por el de-
mandante. Lo que sí resolvemos ahora es, que de acuerdo con
los hechos envueltos, no encontramos ley alguna que sea apli-
cable a esta situación. Pero como según el primer párrafo del
artículo 7 de nuestro Código Civil no podemos prescindir de re-
solver este punto, entendemos que debemos hacerlo conforme al
segundo párrafo de dicho artículo, o sea, a base de la equidad en-
vuelta. Desde el punto de vista de equidad, creemos que sería
injusto obligar al demandado a pagarle un canon de arrenda-
miento al demandante, ya que eso nunca se le sugirió por
nadie durante los dos años que él ocupó esa propiedad, después
de no ser de él. De manera que sería sorprender la buena fe
del demandado.

"Por otro lado, tampoco sería justo que el demandante tuviera que pagar intereses legales sobre las cantidades aumentadas por la sentencia que vamos a dictar según las Conclusiones de Hechos y de Derecho a que llegamos, por una propiedad que ha estado bajo la posesión y uso y disfrute del demandado. Por ello, resolvemos que el demandante no deberá pagar intereses sobre el aumento en valor, según nuestra sentencia, hasta el día 30 de junio de 1949. Las cantidades aumentadas en nuestra sentencia serán con intereses legales desde el 1ro. de julio de 1949 hasta su total pago. Lo que acabamos de resolver representa que el verdadero 'taking' o sea, el momento en que el demandante entró en posesión, fué en junio 30 de 1949."

Desde luego que el tribunal sentenciador erró al aplicar el artículo 7 del Código Civil pues existe ley aplicable al caso, o sea, la sección 5 (a) de la Ley sobre Expropiación Forzosa, según fué enmendada por la sección 3 de la Ley núm. 19, Leyes de Puerto Rico, 1942, Tercera Sesión Extraordinaria (pág. 83), según interpretada por este Tribunal en *López* v. *Tribunal de Distrito*, 67 D.P.R. 176, 178, diciéndose:

"Ésta claramente confiere facultad a la corte de distrito para fijar (1) el periodo dentro del cual los ocupantes deben desalojar los locales, y (2) la cantidad que deben pagar al Estado por su uso desde la fecha en que el Estado se convirtió en dueño de los mismos hasta la fecha en que los desocupen. . . ."

Es de notarse que en dicho caso resolvimos, además, que aún después de dictarse sentencia final en el caso de expropiación forzosa, la corte, a tenor con la sección 5 (a), estaba facultada para fijar la justa compensación que los ocupantes de la propiedad debían satisfacer por el uso de las propiedades hasta que las desalojaran.

Asimismo en el caso de *Autoridad sobre Hogares* v. *Sagastivelza*, 72 D.P.R. 276, 283 en el cual el Tribunal de Expropiaciones también hizo constar que no existía precepto específico aplicable y aplicó el artículo 7 del Código Civil, aun cuando no mencionamos el de *López* v. *Tribunal*, supra, lo aplicamos al decir: ". . .de probarse que la demandada estuvo

en posesión de la finca expropiada con posterioridad a la fecha de la orden de incautación, la demandante tendría, de todos modos, derecho a recobrar una cantidad razonable por el uso de la misma. Cf. *Ball* v. *Vilá*, 67 D.P.R. 415."

██ ██ También se cometió el error señalado por el demandado en cuanto al no pago de intereses por el demandante sobre la suma concedida en exceso a la consignada. En el caso de *Autoridad sobre Hogares* v. *Sagastivelza*, supra, confrontamos la misma situación que en el presente pues en aquél el Tribunal de Expropiaciones hizo constar en su sentencia que se dictaba sin intereses de clase alguna en consideración a que la demandada había conservado después de la expropiación la posesión y disfrute de la finca expropiada y resolvimos que de acuerdo con la sección 5(b) de la Ley de Expropiación Forzosa, según enmendada por la Ley núm. 105 de 7 de mayo de 1948 ((1) pág. 241), era el deber del tribunal condenar a la expropiante al pago de intereses al 6 por ciento sobre la diferencia existente entre la cantidad fijada como justa compensación y la suma depositada.

Aun cuando existe un conflicto en las decisiones en cuanto a la doctrina conocida con el nombre de *"set off"* del valor del uso de la propiedad expropiada contra los intereses devengados, la regla predominante, aun en ausencia de disposición expresa como la contenida en la sección 5(b) de nuestra ley, es al efecto de que la retención de la posesión por el expropiado no afecta su derecho a percibir los intereses. Véanse Monografías en 32 A.L.R. 98; 96 A.L.R. 150; 111 A.L.R. 1299; 33 Ill. L. Rev. 361.

██ Pasamos a considerar y resolver si el demandante tenía derecho, bajo los hechos probados en este caso, a una suma razonable por el uso de las propiedades expropiadas mientras estuvieron en posesión del demandado después de haber vencido el plazo que para hacer su entrega se le dió al emplazarlo. No tenemos duda de que la prueba sostiene las conclusiones de la corte en cuanto a que la posesión del

demandado fué de buena fe, ya que se le informó en el Departamento de lo Interior que no había prisa para la entrega pues las obras de la carretera no darían comienzo hasta dentro de uno o dos años (de hecho no habían comenzado cuando se celebró el juicio), que el Comisionado de lo Interior le concedió prórrogas para hacer la entrega, siendo la última aquélla en que expresamente aceptó que para remover las maquinarias había que demoler los edificios y le concedió permiso para hacerlo. Se probó además que para instalar de nuevo la fábrica de bloques del demandado en otra parte de su finca éste tuvo que construir nuevos edificios.

Nada hay en la prueba que tienda a demostrar que el demandante en alguna forma trató de tomar posesión de las propiedades expropiadas y que el demandado se negara a entregarlas. Tampoco hubo convenio alguno entre las partes en cuanto al pago de cánones de arrendamiento por el demandado ni se solicitó por el demandante o por el demandado que el tribunal los fijara bajo la sección 5(a) de la ley, según interpretada en *López* v. *Tribunal*, supra.

No hay duda de que el demandante pudo haber tomado posesión de las propiedades expropiadas en cualquier momento después del 25 de enero de 1948 y si el demandado se hubiera negado a entregarlas, el tribunal tenía facultad para dictar las órdenes necesarias para hacer valer el derecho del demandante a la posesión. Aun en aquellos casos en que el demandante no ha adquirido el título sobre la propiedad expropiada bajo la sección 5(a), puede obtener la posesión de dicha propiedad bajo la sección 5(c) de la Ley de Expropiaciones, según adicionada por la Ley núm. 216 de 27 de marzo de 1946 (Leyes de Puerto Rico, 1946, pág. 423) pero, con anterioridad a dicha toma de posesión, deberá haberse dispuesto lo necesario para el pago de la justa compensación por el demandante por dicha posesión, de acuerdo con los trámites establecidos en dicha sección.

Arguye el demandado que en ningún caso hasta el pre-

sente El Pueblo de Puerto Rico ha pretendido cobrar por el uso de propiedades expropiadas y de las cuales no ha tomado posesión no obstante habérsele investido con el título de dominio. Esto es un error pues el caso de *Sagastivelza,* supra, demuestra que allí también la demandante reclamó los frutos percibidos por la demandada durante todo el tiempo en que estuvo en posesión y resolvimos que aun en el supuesto de que lo preceptuado en los artículos 283 al 300 del Código Civil no fuera aplicable, el demandante tendría *de todos modos* derecho a recobrar una cantidad razonable por el uso de la misma.

Sostiene el demandado que la práctica correcta a seguirse en estos casos es la establecida en el de *United States* v. *6,576.27 Acres of Land, etc.,* 77 F.Supp. 244 (D.C. N.D., 1948). Aceptando que la práctica allí establecida sea una de las que pueda seguirse bajo la sección 5(a) de nuestra ley (equivalente a la sección correspondiente de la Ley Federal, 40 U.S.C.A., sección 258a, según dijimos en *López* v. *Tribunal,* supra) dicho caso milita en contra del demandado ya que él no la siguió. Se resolvió allí que dictada una orden sobre entrega en abril 9 de 1948 de la propiedad expropiada, de cuyo título habían quedado investidos los Estados Unidos, la corte tenía facultad, bajo la sección 258a, *y a petición de los demandados expropiados,* para extender el término de posesión de los demandados para permitirles recolectar sus cosechas hasta el 1ro. de diciembre de 1948, habiéndose demostrado que las obras de utilidad pública para las cuales se había expropiado el terreno no habrían de comenzar durante dicho término. Esta extensión se hizo no obstante la fuerte oposición del gobierno que alegaba que habiéndosele investido con el título de dominio, a él correspondía y no a la corte, fijar los términos en que los demandados podían continuar en posesión. Al rechazar esta contención la corte dijo:

"La 'facultad para fijar el tiempo dentro del cual y los términos bajo los cuales las personas en posesión serán requeridas

para entregar la posesión. . .'(⁴) significa que la Corte, a la cual se concede tal facultad, puede designar el momento en que el Gobierno pueda tomar posesión física de la propiedad expropiada, la forma en que tal posesión física será entregada y los términos de la misma. 'Términos' abarcan, bajo las circunstancias concurrentes aquí, la facultad por parte de la Corte para decir que los dueños cuyos terrenos han sido 'tomados' en medio, por ejemplo, de la mies (*harvesting season*), tendrán derecho a completar la recolección de sus cosechas en forma ordenada y remover de la propiedad en forma ordenada aquellas pertenencias que tengan derecho a llevarse. La fijación del tiempo de posesión y los términos de posesión deben, desde luego, ser ejercitados razonablemente y con debido respeto a las necesidades del Gobierno y los derechos de los dueños. . . . "

Al enmendar su orden extendiendo el término de los demandados para entregar la posesión, la corte dispuso que "los dueños anteriores pagarán al Gobierno por el uso de las tierras que antes les pertenecían las rentas usuales y acostumbradas en la vecindad."

Como puede verse, el demandado en el presente caso, lejos de atemperarse a la práctica que él mismo arguye debe seguirse en estos casos, nada hizo. Continuó en la posesión de las propiedades expropiadas más bien por tolerancia del dueño, o sea el demandante, pero sin que hubiera concesión, expresa o tácita, por parte del Comisionado de lo Interior, si es que éste tenía facultad para hacerlo, de que el demandado no tendría que satisfacer por su uso y disfrute. Es cierto que el demandante tampoco acudió a la corte, como pudo hacerlo, antes de celebrarse el juicio, para solicitar se fijara el valor razonable por el uso de las propiedades, pero esto no implica que renunciara a su derecho a reclamarlo o que no pudiese hacerlo, como lo hizo, durante el juicio por medio de una de-

---

(⁴) La sección 5(*a*) de nuestra ley, en lo equivalente a la sección 258 *a*, dispone lo siguiente:

"Una vez radicada la petición de adquisición, la corte tendrá facultad para fijar el término dentro del cual y las condiciones bajo las cuales las personas naturales o jurídicas que están en posesión de las propiedades objeto del procedimiento deberán entregar la posesión material al *expropiante*. . . ."

manda suplementaria, bajo la Regla 15 (*d*) de las de Enjuiciamiento Civil, aun cuando erróneamente la titulara demanda enmendada.

En dicha demanda suplementaria el demandante reclamó del demandado "por concepto de cánones de arrendamiento desde la fecha en que fué notificado para que abandonara la parcela expropiada hasta el día en que la abandone de hecho", a razón de un canon de $168.06 mensual y solicitó que se dedujera "de la compensación a pagarse por la parcela y edificaciones expropiadas la cantidad a que El Pueblo de Puerto Rico tenga derecho por concepto de cánones de arrendamiento. . ."

El demandado, al contestar la demanda suplementaria, admitió que había estado en posesión hasta el 30 de junio de 1949, pero que había sido con el consentimiento de El Pueblo de Puerto Rico y que nunca se le exigió ni indicó que tenía que pagar canon de arrendamiento alguno. Planteó, además, varias defensas especiales sustancialmente al efecto de que en el procedimiento de expropiación forzosa no procedía hacer entrega alguna de la compensación a base de "cánones de arrendamiento" por no haber sido pactados ni fijados por la corte de antemano; que la reclamación era tardía y que el Tribunal de Expropiaciones carecía de jurisdicción para resolver sobre la reclamación del demandante.

De acuerdo con la sección 5 (*a*), supra, y bajo la autoridad del caso de *López* v. *Tribunal*, supra, consideramos que el tribunal inferior tenía jurisdicción y que la reclamación del demandante no era tardía.

Como hemos dicho anteriormente, la prueba demostró que para remover la maquinaria de la fábrica del demandado era necesario destruir las edificaciones expropiadas por el demandante. Sin embargo, el demandante en ningún momento destruyó dichos edificios para facilitar su remoción. Por el contrario éste tuvo que proceder, por su cuenta, a la demolición de dichos edificios con el consentimiento del demandado.

Por otra parte, no tenemos duda de que el demandado, quien disfrutó del uso de las propiedades expropiadas mientras estuvo en posesión de ellas, debe satisfacer al demandante una cantidad razonable por dicho uso. *Autoridad* v. *Sagastivelza, supra.* En vista de que el tribunal inferior no resolvió esta cuestión y se limitó a aplicar erróneamente el artículo 7 del Código Civil, consideramos que la determinación de dicha cantidad razonable, bajo las circunstancias concurrentes, debe ser resuelta, en primera instancia, por dicho tribunal, de acuerdo con la prueba sobre el valor del uso y el tiempo que disfrutó de la propiedad expropiada, y en su consecuencia, el caso será devuelto para dicho fin. Al resolver esta cuestión el tribunal tomará en consideración el hecho de que no existió contrato entre las partes y que la obligación del demandado debe circunscribirse al tiempo en que realmente usó las propiedades expropiadas sin incluir el tiempo que invirtió en demoler los edificios y sacar la maquinaria de ellos.

El tercer error señalado por el demandante y el cuarto y el quinto del demandado están íntimamente relacionados y envuelven las mismas cuestiones, sosteniendo el demandante que el tribunal erró al conceder al demandado $900 por la construcción de un acceso desde uno de los remanentes de su finca a la nueva carretera y al negarse a admitir prueba sobre los beneficios especiales recibidos por los dos remanentes de dicha finca; sosteniendo el demandado que el tribunal erró al conceder el costo de un acceso ($900) en vez de dos accesos que eran necesarios y al permitir evidencia sobre los alegados beneficios que recibiría el resto de la propiedad del demandado con motivo de la carretera a construirse.

El Tribunal de Expropiaciones, a pesar de haber incluído en su sentencia conclusiones de hecho y de derecho, no hizo conclusión de hecho alguna en cuanto a si el remanente de la finca del demandado recibiría beneficios especiales al construirse la carretera, en contraposición a los beneficios que recibiría la comunidad en general. El récord demuestra que

se admitió evidencia del demandante para probar beneficios especiales, que a petición del demandado se eliminó y luego se volvió a admitir. (T.E. págs. 36–37, 128–131, 172–173.) La conclusión lógica es que el tribunal a quo consideró que no se habían probado satisfactoriamente los beneficios especiales al remanente de la finca del demandado.

Existe gran diversidad de opiniones en cuanto a si los beneficios recibidos por el remanente de la propiedad con motivo del uso a que era de dedicarse la parte expropiada pueden considerarse como compensación parcial o total (*set off*) de los daños causados a dicha propiedad, pero aparentemente la regla general establecida es que sólo los beneficios especiales o directos recibidos por la propiedad no expropiada pueden ser considerados pero no así los beneficios generales obtenidos por la comunidad con motivo de la obra a realizarse. Así lo indicamos en *Pueblo* v. *García*, supra, pág. 513, y ya lo habíamos resuelto desde el año 1912 en *American Railroad Co.* v. *Quiñones*, 18 D.P.R. 745, 750, al decir: "No puede estimarse Quiñones compensado de los daños y perjuicios con los beneficios que aun con el mayor valor de sus terrenos haya podido reportarle el ramal de que se trata, pues esos beneficios nunca serán exclusivos para él, sino comunes a todos los propietarios del distrito en que él vive." Sobre esta cuestión véase la extensa Monografía en 145 A.L.R. 7 y 3 Nichols *on Eminent Domain*, 3ra. ed.; pág. 38, sec. 8.62 *et seq.*

Hemos examinado detenidamente toda la prueba presentada en cuanto a este particular y no creemos que el tribunal a quo cometiera manifiesto error en su apreciación al no considerar que se había probado que el remanente de la finca del demandado recibiría un beneficio especial. La finca del demandado colinda por el este con la carretera que conduce de Ponce a la Playa. El remanente de la finca, después de segregarse la parcela expropiada, colinda con la misma carretera de Ponce a la Playa y además con la carretera "Ponce By-Pass" a construirse a través de la parcela expropiada y de

otras propiedades expropiadas con el mismo fin y las cuales recibirían el mismo beneficio que la del demandado con dicha nueva vía de comunicación. Bajo estas circunstancias, consideramos que el beneficio es uno de carácter general a la comunidad. 145 A.L.R. 101.

En cuanto a la concesión al demandado de $900 como costo de la construcción de un acceso a la nueva carretera desde una de las parcelas del remanente de su finca, identificada con la letra "A", y la no concesión de una suma igual para la construcción de otro acceso desde la segunda parcela del remanente de la finca, identificada con la letra "B", el tribunal hizo constar en su tercera conclusión de derecho, lo siguiente:

"3. Como la parcela expropiada separa en dos partes el resto de la finca principal del demandado, éste reclama OCHO MIL DÓLARES ($8,000), por la parcela (A). En el plano que consta en el expediente hemos marcado con las letras (A) y (B) las dos parcelas que le quedan al demandado. La (A) consta de una cabida aproximada de dos mil metros cuadrados. Durante el juicio el Lic. Guillermo González informó al Tribunal que el demandado no solicitaba compensación alguna por daños por segregación ocasionados a la Parcela (B).

"Con la excepción que apuntaremos creemos que la Parcela (A) no ha sufrido depreciación tasable ocasionada por la expropiación. La cabida de dos mil metros cuadrados facilita el uso de la misma para varios fines. Los cables eléctricos que pasan sobre ella actualmente son los mismos que pasaban antes de la expropiación. Aunque el nivel de la carretera a construirse en la parcela expropiada será un poco más bajo que el de la Avenida Hostos, creemos que se le debe pagar al demandado el coste de la construcción del acceso de la Parcela (A) a la nueva carretera, lo cual, según el testigo Alfredo Méndez, es NOVECIENTOS DÓLARES ($900)."

En efecto, a las págs. 237–38 de la Transcripción de Evidencia, cuando declaraba el perito del demandante Alfredo Méndez, Jr., ocurrió lo siguiente:

"P. ¿En cuánto y en qué forma llega usted, si llega a alguna conclusión, serían los daños que le ocasionaría a esas dos parcelas que se dividen?

"R. Los daños que se ocasionarían a estas dos parcelas son equivalentes a lo que costaría darle una entrada a la nueva carretera en proyecto.

"P. ¿A cada una de las parcelas?

"R. A cada una de las parcelas.

"P. ¿O sea, serían dos entradas?

"R. Serían dos entradas, una a cada una.

"Lic. González: Nosotros pedimos daños por segregación (*severance damages*) únicamente en cuanto a la parcela 'A'; *nosotros no reclamamos nada en cuanto a la parcela 'B'*.

"..................

"Lic. González: *En cuanto a eso nosotros no reclamamos nada por daños por segregación en cuanto a la parcela 'B'*.

"La Corte: ¿Ustedes reclaman en cuanto a la 'A'?

"Lic. González: *Severance damages* en cuanto a la parcela 'A' y el valor de la parcela expropiada, *pero no reclamamos nada en cuanto a la parcela grande.*

"La Corte: Ustedes reclaman a base de no solamente acceso a la misma, sino a base de que queda inservible.

"Lic. Romanace: Pero en cuanto a si queda inservible o no el otro testigo declaró que se limitaba solamente en cuanto al acceso que había que darle a esa parcela.

"Lic. González: *Nosotros decimos que no debemos referirnos a la otra parcela porque nosotros no reclamamos nada en cuanto a ella.*

"Lic. Romanace: La situación es la siguiente: El compañero contrainterrogó al testigo Zambrana y una pregunta que le hizo fué que si olvidándose de cualquier beneficio especial que podía recibir la parcela 'B' *en qué consistiría o en qué clasificaría los daños, en cuánta cantidad, y el señor Zambrana en último minuto declaró lo que costaría darle acceso a la nueva carretera.*

"Lic. González: Yo no estoy pidiendo nada por eso; *yo no quiero nada en cuanto a acceso de la parcela 'B'. Yo lo único que pido es en cuanto a daños de la parcela expropiada y daños en cuanto a la parcela 'A'.*" (Bastardillas nuestras.)

Declaró entonces el perito que él había calculado el costo de dos accesos a las parcelas "A" y "B" en $1800 pero como

se había limitado la cuestión a un acceso su costo sería solamente $900.

No obstante la renuncia expresa hecha por el demandado en cuanto a que no reclamaba nada en cuanto a la parcela "B", que no quería nada en cuanto al acceso de la parcela "B", arguye en apelación que sus manifestaciones deben considerarse en relación con la posición que había asumido en cuanto a que la parcela "A" había quedado totalmente inservible y que consecuente con esa posición él no podía admitir como medida de daños el costo de construcción de acceso alguno y que por eso fué que se limitó el testimonio del perito a la parcela "A"; que al rechazar la corte la teoría del demandado de que la parcela "A" había quedado inservible y adoptar como medida de daños la del costo del acceso, sería injusto limitar los daños a la mitad de su montante, ya que ambas parcelas "A" y "B" quedan igualmente bajas con relación a la carretera; que sería una interpretación rígida e inflexible de sus manifestaciones la que le negara los daños que el propio demandante admite que sufrió, o sea el costo de los dos accesos, como penalidad por haber adoptado una teoría distinta y haber sido consistente con la misma en el juicio.

Hemos expuesto el argumento del demandado en extenso y creemos que es insostenible. Todo él es aplicable a la posición que adoptó en cuanto a la parcela "A", es decir, siempre sostuvo que la misma había quedado totalmente inservible y reclamaba como daños su valor total. El tribunal rechazó esta contención y sólo concedió el valor del acceso a dicha parcela.(5) En cuanto a la parcela "B", la posición adoptada por el demandado fué completamente distinta. Repetidas veces hizo constar que nada reclamaba en concepto de daños por separación (*severance damages*) de dicha parcela y tampoco por el valor de un acceso de la misma. No vemos cómo pueda ahora quejarse de que el tribunal no le concedió aquello

---

(5) Esta actuación se señala por el demandado como otro error independiente del que ahora consideramos.

que expresamente había renunciado a reclamar. No se cometió el error señalado por el demandado y tampoco el imputado por el demandante pues la declaración del perito Méndez, testigo del propio demandante, demostró que el daño a la parcela "A" quedaba subsanado con la construcción del acceso a un costo de $900.

 Pasamos ahora a considerar los restantes errores señalados por el demandado en su recurso.

Sostiene en primer término que el tribunal erró al valorar la parcela expropiada en solamente $8,000. Admite que el señalamiento va dirigido a la apreciación de la prueba hecha por el tribunal pero arguye que el error es tan manifiesto que, como cuestión de derecho, se impone la modificación de la sentencia y la concesión de una indemnización más alta.

El único perito que declaró como testigo del demandante, Ernesto Zambrana, valoró la parcela expropiada a razón de $1 el metro cuadrado. La parcela constaba de 6143.7989 metros cuadrados, lo que le daría un valor de $6,143.79. El perito Zambrana hacía un año venía trabajando como tasador del Departamento de lo Interior pero nunca había hecho tasación alguna de terrenos en Ponce con anterioridad a los que tasó para la expropiación del presente caso.

Los testigos del demandado en cuanto a la valoración de la parcela fueron: *Carlos Clavell*, quien declaró que había sido Gerente del National City Bank, Sucursal de Ponce, durante cinco años y a la fecha del juicio había sido nombrado por el Tesorero de Puerto Rico miembro de la Junta General de Tasación de la isla; se ha dedicado al negocio de compraventa de bienes inmuebles durante más de veinte años; tuvo a su cargo la venta de terrenos colindantes con la parcela expropiada e intervino en la compra que hizo la Compañía de Fomento de 31,000 y pico de metros cuadrados para la fábrica de la Textron en 1945, a razón de $1 el metro cuadrado; valoró la parcela del demandado a un promedio de $4.50 el metro cuadrado, ya que la parte que da al frente de la Avenida Hostos (Carretera Ponce–Playa) vale a $6 el metro cua-

drado; afirmó que después de anunciarse la venta de los terrenos para la Textron aumentó el precio de todos los terrenos circundantes. *José A. Ferré,* quien declaró ser Vicepresidente de la Ponce Cement y de la Porto Rico Iron Works de Ponce, situada en la Avenida Hostos como a kilómetro y medio más abajo de los terrenos del demandado; que ha comprado terrenos en la Avenida Hostos; explica detalladamente varias transacciones realizadas en Ponce y afirma que la parcela del demandado vale de cuatro a cinco dólares el metro cuadrado. Al mismo efecto *Enrique Vázquez Reyes,* cualificado como perito, declaró que desde que se fundó la fábrica de la industria de la aguja en aquella región y luego al anunciarse que la Textron establecería su fábrica, toda esa zona se convirtió en algo "como si fuera oro" y tasó la parcela a $5 el metro cuadrado.

El tribunal, en sus conclusiones de hecho, después de referirse en forma genérica a la prueba, hizo constar lo siguiente:

> *"Las partes han estado de acuerdo en que desde el punto de vista agrícola, el suelo es de muy buena calidad, pero que el mejor uso a que se puede dedicar esta parcela es para fines industriales, o sea, para la construcción de edificios para factoría y otras industrias.* Efectivamente, toda la finca del demandado de 6.97 cuerdas, era dedicada para la explotación de una industria de fabricación de bloques de cemento, de los que se usan para construir paredes de edificios.

> "No detallaremos todo el análisis que hemos hecho de la prueba admitida en este caso, pero como resultado del mismo, llegamos a la conclusión que el valor en el mercado, justo y razonable, de la parcela expropiada, allá para junio de 1947, era OCHO MIL DÓLARES ($8,000)." (Bastardillas nuestras.)

El demandante había depositado $16,568.76 como valor del terreno y los edificios. Por estipulación de las partes se convino en que los edificios valían $14,893.75, lo cual dejaba un remanente de $1,675.01 como valor del terreno expropiado. El tribunal aumentó dicho valor a $8,000 por poco más de una cuerda y media de terreno. Concedió además $491.68, que

también estipularon las partes, como compensación por las aceras y pavimentos. Bajo todas las circunstancias concurrentes, no creemos que el error imputado fuera cometido. El hecho de que la valoración dada por el tribunal no concuerda con la tasación de los peritos de una y otra parte no significa, como arguye el demandado, que su conclusión no esté sostenida por la prueba. Ya hemos resuelto que el tribunal en estos casos no tiene que seguir indefectiblemente la opinión de las partes. *Autoridad Sobre Hogares* v. *Viera*, ante, pág. 732 y casos allí citados.

El próximo error señalado por el demandado se refiere a la no admisión como prueba de unas cartas a virtud de las cuales se concedió por el demandado una opción a la Seven-Up Bottling Co., Inc. para comprar una parte de los terrenos expropiados, a razón de $4 el metro cuadrado. El motivo que dió la corte para no admitir esa prueba fué que no habiendo la esposa del demandado intervenido en la transacción, el contrato de opción era nulo e hizo referencia al caso de *Encarnación* v. *Salim*, 69 D.P.R. 766.

Arguye el demandado que dicho caso no es aplicable al de autos, ya que en aquél fueron los propios esposos Salim quienes negaron eficacia al contrato, mientras que en el presente se trata de atacarlo colateralmente por tercera persona o sea el demandante.

No nos detendremos a resolver si la distinción que hace el demandado tiene algún mérito pues consideramos que el error no fué cometido por otras razones.

En las cartas de referencia se concedió por el demandado a la Seven-Up-Bottling Co., Inc. una opción de venta de una parcela de su terreno a razón de $4 el metro. Dicha opción vencía originalmente el 15 de abril de 1947 y luego fué extendida hasta el 30 de abril de 1947.

Nada hay en la prueba que demuestre que la Seven-Up Bottling Co. Inc. hiciera efectivo su derecho de opción dentro del término concedídole por el demandado y que se perfeccio-

nara contrato de compraventa alguno entre las partes antes de iniciarse la expropiación en este caso el 20 de junio de 1947. Si bien las cartas tendían a demostrar la opción concedida, tal prueba es inadmisible en procedimientos de expropiación forzosa. Así lo resolvimos en *Pueblo* v. *Quiñones*, 71 D.P.R. 261 y así ha sido resuelto en otras jurisdicciones, *State* v. *Nelson*, 2 N.W.2d 572; Anotación en 155 A.L.R. 262. Como se dijo en el caso de *Nelson:* "Una opción no es una venta. Muchas consideraciones pueden intervenir en el propósito de adquirir una opción y a menos que madure en una venta, no debe admitirse como prueba del valor."

Por último, alega el demandado que el tribunal erró al no conceder como daños el valor total de la faja de terreno "A" que quedó inservible como resultado del desmembramiento (*severance*) de la finca principal.

Ya nos hemos referido antes a las parcelas "A" y "B". Son ellas las que han quedado a los lados norte y sur de la parcela expropiada. La marcada con la letra "A" consta de unos dos mil metros cuadrados pues mide 105 metros de largo por 15 de ancho en algunos sitios y 20 metros de ancho en otros. La prueba del demandado tendió a demostrar que dicha faja de terreno quedaría cinco pies más baja que la carretera a construirse; que su relleno costaría alrededor de $4 el metro, o sea más o menos el valor que el demandado le da a sus terrenos; que si bien dicha parcela tiene 105 metros con frente a la nueva carretera, tendría solamente 15 ó 20 metros de fondo, lo que impediría su lotificación o la construcción de edificación alguna en ella; que la parcela se inundaría de agua de no ser rellenada. Ya hemos dicho también que el tribunal limitó los daños ocasionados a esta parcela al costo de construcción de un acceso desde ella a la carretera calculado en $900.

Arguye el demandado que tanto su prueba como la del demandante demostró que para construir dicho acceso era necesario utilizar terrenos de El Pueblo de Puerto Rico, es de-

cir, los ya expropiados. En efecto los testigos del demandante, Zambrana y Méndez, Jr., admitieron que para construir el acceso había que utilizar terrenos del demandante, especificando este último que la construcción del terraplén o acceso de $900 dependía de poderse utilizar 10.50 metros de terreno del demandante y que el mismo no sería factible sin utilizar dichos terrenos. (T.E. págs. 217, 240, 242, 249 y 250.)

Bajo estas circunstancias, creemos que el tribunal erró al limitar los daños ocasionados a la parcela "A" a $900, costo de construcción del acceso a la nueva carretera, ya que la prueba del demandante demostró que dicho acceso no podía construirse a menos que se utilizaran terrenos del propio demandante para lo cual éste no había dado su consentimiento. La medida de daños a la parcela "A" no podía circunscribirse al costo del acceso sino a la disminución de su valor en el mercado, en tanto pudo haber sido ésta causada por la expropiación, tomando en consideración la posibilidad de que dicho acceso no pudiera construirse. Véase en *Pueblo* v. *García*, supra, la cita de la obra de Nichols, pág. 513. También en cuanto a este particular corresponde al Tribunal de Expropiaciones, en primera instancia, determinar la cuantía de dichos daños.

*Debe dejarse sin efecto la sentencia y devolverse el caso para ulteriores procedimientos consistentes con esta opinión.*

El Juez Asociado Sr. Negrón Fernández se inhibió.