EL MUNICIPIO DE CAROLINA *v.* SALDAÑA ET AL.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 598.—Resuelto en abril 28, 1911.

EXPROPIACIÓN FORZOSA—CUANTÍA DE LA INDEMNIZACIÓN.—Una vez justificada la necesidad de la ocupación del terreno que se trata de expropiar, la indemnización que se conceda al propietario ha de comprender, no sólo el valor de la cosa expropiada, sino también una remuneración por los daños y perjuicios que se le ocasionen con la privación de la propiedad.

ID.—PRUEBAS CONTRADICTORIAS—APRECIACIÓN DE LA CORTE INFERIOR.—Siendo contradictorias las pruebas referentes a la cuantía de la indemnización que deba concederse en este caso, y no habiéndose demostrado que la corte inferior actuara movida por pasión, prejuicio o parcialidad, ni que incurriera en manifiesto error, su apreciación debe aceptarse, especialmente cuando los demandados no han probado el perjuicio que la ocupación del terreno haya de ocasionarles, y las cantidades fijadas por la corte inferior parecen ser las compensaciones apropiadas por dicha ocupación.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Juan Hernández López.*

Abogados del apelado: *Sres. Texidor y Cautiño.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El municipio de la Carolina entabló demandas contra José Esteban Saldaña y contra Andrés Crosas sobre expropiación de terrenos y establecimiento de servidumbres para servicio público, que fueron contestadas separadamente por los demandados. Luego ambos pleitos, a petición de las partes, se acumularon y se resolvieron por una sola sentencia contra la cual se interpuso el presente recurso de apelación.

Los hechos fundamentales alegados por la corporación demandante fueron, en resumen, los siguientes:

Que el concejo municipal de la Carolina acordó por unanimidad proceder a la construcción e instalación de un acueducto para el pueblo.

Que hecho el estudio de la obra, resultó de absoluta necesidad para su construcción y explotación tomar una faja de terreno de 2 metros de ancho y 694 de largo, partiendo de la carretera de Río Piedras a Carolina, en línea recta y dirección Sudeste, ocupando dicha faja en su totalidad terrenos propios de Saldaña, hasta llegar a la colindancia de otros terrenos de T. G. Waymouth, y establecer una servidumbre de paso por la misma finca de Saldaña por un camino privado que parte de la colindancia de la finca con la carretera hasta llegar a la colindancia con Waymouth. Que la ocupación de la faja de terreno será permanente y con objeto de colocar en ella los tubos del acueducto a tal profundidad que permita en

toda su extensión, menos en dos puntos ocupados por una llave de desagüe y una ventosa, el laboreo de la superficie, y la servidumbre se usará continuamente durante la construcción del acueducto y después solamente para el paso de los empleados y encargados de la conservación del acueducto, y, en caso necesario, de carros para conducir algún material para reparaciones.

Que también resultó de absoluta necesidad ocupar permanentemente, (*a*) una faja de terreno de 2 metros de ancho y 586 de largo, partiendo de la colindancia de los terrenos de Waymouth con los del demandado Crosas y atravesando estos últimos hasta llegar a una loma de la propiedad de Crosas, en línea recta y dirección Sudeste, con objeto de colocar los tubos del acueducto en la forma ya indicada, (*b*) una superficie de una cuerda y 40 céntimos de otra en la dicha loma de Crosas para establecer la casa de bombas, pozos tubulares, depósito y camino de unión, y (*c*) una servidumbre de paso por camino privado dentro de la finca de Crosas, partiendo de la colindancia con Waymouth en dirección Sudeste hasta la loma citada y de ella, en el punto en que se ha de establecer el depósito, hasta el río Carolina, en dirección Noroeste.

Que en vista de tal necesidad, el municipio de Carolina acudió al Consejo Ejecutivo solicitando que se declarara de utilidad pública la ocupación de los terrenos y el establecimiento de las servidumbres, y el Consejo tramitó en forma el expediente y, por resolución de 2 de febrero de 1909, hizo la declaración tal como la solicitó el municipio, insertándose en ambas demandas íntegra la dicha resolución.

Que los demandados se negaron a entregar las tierras y a permitir las servidumbres.

Que el municipio de Carolina se halla dispuesto a pagar al demandado Saldaña por la ocupación de la faja de terreno a razón de cien dollars por cuerda y por la servidumbre una indemnización de cincuenta dollars; y al demandado Crosas a razón de cincuenta dollars por cuerda y, además, ochenta dollars por la servidumbre de paso.

Que la ocupación de los terrenos y el establecimiento de las servidumbres, son absolutamente necesarios para la construcción y explotación del acueducto.

Los demandados contestaron negando los hechos de las demandas en cuanto se opusieran, directa o indirectamente, a los siguientes:

Que no es de absoluta necesidad para la construcción y explotación del acueducto, la expropiación de las fajas de terreno y la constitución de las servidumbres a que se refieren las demandas, y

Que las tierras que se tratan de expropiar y las servidumbres que se pretenden constituir, exigen una indemnización muy superior a la ofrecida por el demandante en ambos casos.

Celebrada la vista, la corte dictó sentencia declarando que los hechos y la ley están a favor de la parte demandante y en contra de los demandados, y, en su virtud, con lugar la demanda, con costas. En la sentencia se declara de absoluta necesidad la ocupación de las tierras, que se describen detalladamente, y la constitución de las servidumbres, que se determinan con toda precisión, y se fijan las cantidades que el demandante debe satisfacer a los demandados, ordenándose que en cuanto a las servidumbres se proceda al otorgamiento de escrituras públicas.

La ley aplicable a este pleito es la relativa a expropiación forzosa de 1903, tal como quedó enmendada en 1908. Leyes de 1908, página 98 y siguientes.

La sección 2, enmendada, de dicha ley, dice así:

"Sección 2.—Que la propiedad particular, como también la definida en el párrafo 2 del artículo 328 del Código Civil como bienes patrimoniales, podrá, de acuerdo con las disposiciones de esta ley, ser expropiada, perjudicada o destruída en todo o en parte, o, para fines legales imponerse a la misma una servidumbre perpetua o temporal, cuando haya sido declarada de utilidad pública por el Consejo Ejecutivo. La declaración de utilidad pública será hecha por el Consejo Ejecutivo, previa audiencia en todo caso, de aquellos a quienes interese ser oídos sobre la conveniencia de dicha declaratoria y sobre la

necesidad para el mejor servicio público y mejor realización con tal fin de la obra de que se trate, de la expropiación o expropiaciones de propiedad particular que hayan de efectuarse, o de la imposición de las servidumbres que sobre tal propiedad se requiera. Al hacer el Consejo Ejecutivo la declaración de la utilidad pública de determinada obra, fijará concretamente la propiedad que haya de ser expropiada o gravada para la realización de aquélla.''

El precepto de ley transcrito, tuvo aplicación cumplida en el presente caso.

La utilidad pública de la construcción del acueducto fué declarada por el Consejo Ejecutivo después de celebradas audiencias públicas por el Consejo y por su Comité de Franquicias, y al hacerla el Consejo fijó concretamente las propiedades que debían ser ocupadas y gravadas. No sólo se limitó la investigación y resolución del Consejo a la determinación de la utilidad pública en general de la obra que intentaba realizar el municipio, sino, de acuerdo con la ley, a la necesidad de la ocupación y gravamen de las tierras especificadas en las demandas.

La sección 4, enmendada, de la repetida ley de expropiación, dice así: .

"Sección 4.—Hecha la declaración de utilidad pública de una obra, si los dueños de la propiedad que haya de ser expropiada no se aviniesen por cualquier motivo a consentir la expropiación o expropiaciones que aquélla requiera, determinará ello una causa de acción en favor del que haya de realizar dicha obra, y podrá éste ejercitarla contra los mencionados propietarios ante la corte de distrito del distrito judicial en que radique el todo o parte de la propiedad de que se trate, y en la forma ordinaria que el Código de Enjuiciamiento Civil determina para el ejercicio de las acciones. Al deducirse, en ese caso, la demanda, deberá insertarse en ella íntegra la declaración de utilidad pública hecha por el Consejo Ejecutivo o acompañar con aquélla copia de dicha declaración, y consignarse la cantidad que el demandante está dispuesto a pagar por la propiedad que haya de expropiarse.''

También tuvo en este caso aplicación cumplida el anterior precepto de ley. No conformes los demandados, acudió el de-

mandante a la corte de justicia competente y ésta, después de oídas las alegaciones y las pruebas, declaró necesarias la ocupación de los terrenos y la constitución de las servidumbres y fijó el montante de las indemnizaciones que el demandante debía satisfacer a los demandados.

Como fundamentos del recurso, alegan los apelantes:

1º. Que la Corte de Distrito infringió el artículo 355 del Código Civil Revisado;

2º. Que no concedió a los demandados una justa indemnización;

3º. Que a lo sumo la sentencia concede indemnización por el valor de las cosas expropiadas, pero no señala remuneración alguna por daños y perjuicios, y

4º. Que la sentencia condena en todas las costas a los demandados.

Examinemos el primer fundamento. Sostienen los apelantes que para que pudiera haberse decretado la expropiación en este caso, hubiera sido necesario demostrar la necesidad absoluta de la ocupación de las tierras que les pertenecen, para fines de utilidad pública, y que tal necesidad absoluta no quedó demostrada.

Nuestra ley civil prescribe que "nadie podrá ser privado de su propiedad sino por autoridad competente y por causa de utilidad pública, previa siempre la indemnización correspondiente."

Veamos si este precepto de ley, que ha sido sostenido en toda su integridad en repetidas ocasiones por esta Corte Suprema, ha sido infringido o aplicado rectamente en este caso.

La obra que trata de construir el municipio de la Carolina, es un acueducto para el servicio general del pueblo. Su utilidad pública es tan evidente, que no puede haber discusión sobre este extremo. Además, fué declarada con todas las formalidades que la ley exige, por el Consejo Ejecutivo de Puerto Rico.

La controversia existe en este caso sobre la necesidad de

la ocupación de las tierras especificadas en la demanda y no de otras.

Para basar su sentencia, el Juez de Distrito emitió una opinión de la cual transcribiremos los párrafos relativos al examen y apreciación de las pruebas, por encontrarlos enteramente conformes con el resultado final de nuestro propio examen y apreciación de dichas pruebas.

"El proyecto de obras de ese acueducto, llevado a cabo por el ingeniero, Sr. del Valle Zeno, y que es objeto de esta controversia, toma el agua del Río Grande de Loíza como a unos dos kilómetros de la población, y eleva las aguas a una colina situada en los terrenos del Sr. Crosas con objeto de darles la presión suficiente hasta su conducción al poblado.

"Y, según ese proyecto, es necesario construir en los terrenos del Sr. Crosas la toma por medio de pozos tubulares: la casa de bombas y por cañerías elevarlas a los depósitos situados en el alto del cerro para que desde allí y en línea recta la cañería hasta la población, atraviesen los terrenos de dicho Sr. Crosas, luego los del Sr. Waymouth y por último los del Sr. Saldaña hasta entrar en el pueblo por estar esta última finca colindando con él.

"Dos objeciones resultantes de la prueba se han hecho a ese proyecto, y por tanto, la autorización que en concordancia con él se solicita del tribunal; una es, que sin molestar a los Sres. Crosas y Saldaña puede construirse el depósito de aguas inmediato al pueblo de la Carolina, en un sitio por donde el río pasa muy cerca de él, que tiene una prominencia denominada el "Alto del Tamarindo," y que aún cuando ella no es suficiente para dar la debida presión a las aguas, puede ésta, sin embargo, suplirse con la construcción de una torre; y la otra objeción es que aún haciéndose los depósitos de aguas en el cerro perteneciente al Sr. Crosas, todavía podría la tubería de agua ir hasta el pueblo sin necesidad de atravesar los terrenos del Sr. Saldaña, o por lo menos no cruzándolos rectamente como se proyecta sino desviándose en curvas por las márgenes del río, para obstaculizar lo menos posible tal propiedad.

"Tomando en cuenta las declaraciones de los ingenieros, Sres. del Valle y Don Luis Rubio, quien por cuenta del Departamento de Obras Públicas estuvo sobre el terreno para examinarlo y estudiar el proyecto del Sr. del Valle, llegamos a la conclusión de que efectivamente el sitio más a propósito y conveniente para establecer el acueducto de Carolina es el escogido por el Sr. del Valle; y esto no es sólo

porque la obra resulte más barata, y por tanto, de más beneficio para toda la comunidad, que construyendo una torre, sino porque tiene además la ventaja, que no reporta la torre, de poder tomar el agua de un lecho arenoso que ya la da filtrada, lo que es de suma conveniencia para los vecinos de la Carolina; y a pesar de las explicaciones que dió el perito de la parte demandada Don José Antonio Canals, entendemos por la prueba toda que ofrece más garantía y solidez para el futuro construir los depósitos de agua sobre terreno firme que no sobre torres, en países como el nuestro sujetos con frecuencia a huracanes y temblores de tierra. Y si miramos esa cuestión bajo su aspecto económico, resultaría la construcción de la torre bastante más costoso que la obra proyectada por el Sr. del Valle, lo que traería como consecuencia lógica el aumento de capital para la misma y, por consiguiente, el aumento de precio en el consumo del agua para los vecinos.

"En resumen, pues, somos de opinión que tal como ha sido proyectada la obra para el acueducto, es la mejor proposición la de construir los depósitos de aguas en el cerro del Sr. Crosas y no en una torre en el "Alto del Tamarindo.""

"No creemos viable tampoco la solución subsidiariamente propuesta de que en lugar de seguir la tubería una línea recta como está proyectada por los terrenos del Sr. Saldaña, se desvíe formando curva a buscar las márgenes del río.

"De la prueba pericial sobre este punto resulta que necesariamente habrían de colocarse codos, y por consecuencia de ellos y de la fricción en la corriente de las aguas disminuiría inevitablemente su presión y habría que subsanar esto dando más presión en los depósitos.

"Por estas razones no entendemos viable tampoco esa solución y optamos porque la cañería siga la línea recta propuesta en los terrenos del Sr. Saldaña.""

Habiendo en consideración todo lo expuesto, se concluye que la necesidad de la ocupación de las tierras especificadas en las demandas, con los propósitos expresados en las mismas, quedó plenamente demostrada en este caso, a los efectos de construir un acueducto para el uso de todos los vecinos de la Carolina, tomando el agua del sitio en donde es más pura, construyendo el depósito en el lugar más apropiado, pasando la tubería por el camino más corto y derivado como consecuencia mayor presión en el agua y menor gasto en la construcción y conservación de la obra.

Examinemos los fundamentos relativos a la compensación.

La indemnización comprenderá, no sólo el valor de la cosa de la cual el propietario es privado, sino también una remuneración por los daños y perjuicios que se le ocasionen con la privación de la propiedad, dice el último párrafo del artículo 355 del Código Civil antes citado.

En el presente caso, el demandante consignó en sus demandas las cantidades que estaba dispuesto a satisfacer a los demandados y éstos alegaron que tales cantidades no eran adecuadas. Ambas partes presentaron pruebas que resultaron contradictorias y la corte resolvió el conflicto fijando como justas y procedentes indemnizaciones las ofrecidas por el demandante. El juez se expresó así:

"Al Sr. Saldaña le ofreció el municipio de la Carolina el terreno que ocupase con su cañería a razón de cien dollars la cuerda ocupada; y por la servidumbre de paso una indemnización de 50 dollars.

"En cuanto al Sr. Crosas se le ofreció pagarle a razón de 50 dollars la cuerda de terreno que se ocupase y 80 pesos por la servidumbre de paso.

"Para justificar el valor de los terrenos se ha traído por la parte demandante como prueba dos peritos que valoraron el terreno del Sr. Saldaña, teniendo en cuenta su proximidad al pueblo y la clase de cultivo para que son aptos, a razón de cien pesos la cuerda; y el terreno del Sr. Crosas a 80 pesos el bajo y a 50 pesos al alto. También se presentó por la propia parte certificaciones de la valoración de esos terrenos para el pago de contribuciones de las que resultan que el terreno del primero está valorado a razón de 71 pesos 50 centavos la cuerda, y el del segundo a 31.30.

"A su vez los demandados presentaron un perito que no era vecino de aquella localidad como los anteriores y que sólo vió la finca con motivo de la declaración que había de prestar en este juicio, quien valoró los terrenos del Sr. Saldaña en 400 pesos la cuerda y los del Sr. Crosas en cien pesos el terreno bajo y en 50 el alto. Además presentó la copia de una escritura de la que resulta que el Sr. Saldaña en el año 1886 vendió 15 cuerdas y 75 centavos a razón de 200 pesos la cuerda para el establecimiento de la central Progreso.

"Del conjunto de todas estas pruebas llegamos a la conclusión de que el precio ofrecido por el ayuntamiento de la Carolina a los

Sres. Saldaña y Crosas era equitativo y justo: les ofrecieron lo mismo que pericialmente se ha demostrado que valen y más del valor que tienen calculado para los efectos de la contribución. Y el hecho de que en 1886 se vendieran 15 cuerdas 75 centavos de ese terreno para la central Progreso, no nos demuestra que ese sea el valor actual de esas tierras, de una parte teniendo en cuenta que se vendían para establecer una central y de otra porque no se nos ha probado que los precios del año 1886 fueran iguales a parecidos a los actuales. En cuanto a la declaración del perito de los demandados, nos pareció bastante exagerada, mucho más si se compara con la venta en el año 86 para una central.

"Y el precio ofrecido por el ayuntamiento de la Carolina, es tanto más equitativo, si se tiene en cuenta que el establecimiento de la tubería que ha de pasar por los terrenos del Sr. Saldaña y del Sr. Crosas, en nada les afecta para el cultivo de esa faja de terreno por cuanto irá a una profundidad aproximada de 80 centimetros cuando la capa vegetal en aquel sitio no excede de 45, y por tanto, en nada ha de molestar la tubería para las labores agrícolas.

"Respecto a la indemnización ofrecida por la servidumbre, no se ha hecho objeción al valor de ella y, por consiguiente, hemos de admitir que es la justa."

No se ha demostrado que la corte actuara movida por pasión, prejuicio o parcialidad, ni que cometiera error manifiesto, y por lo tanto, no debemos alterar su apreciación, tanto más cuanto que no se alegó expresamente por los demandados en sus contestaciones ni se probó en el acto del juicio, que la construcción del acueducto les ocasionara perjuicios determinados reales y efectivos, y las cantidades fijadas por el juez sentenciador parecen las compensaciones apropiadas por la ocupación de las tierras y la constitución de las servidumbres, dadas las circunstancias de este caso.

Examinemos, por último, el fundamento relativo a las costas. Los demandados no discuten el derecho de la corte de distrito a imponer las costas en casos de esta naturaleza, pero alegan que siendo la cuantía de cada uno de los pleitos acumulados inferior a quinientos dollars, no pueden recobrarse como costas los honorarios de los abogados.

La corte en su sentencia se limita a imponer las costas

sin expresar si los honorarios de los abogados están com-
prendidos o nó en ellas. Esta cuestión pende aún, al parecer,
de resolución en la corte de distrito. Presentado el *memo-
randum* de costas y desembolsos por el demandante, fué im-
pugnado por los demandados y aún no sabemos si la corte
de distrito ha aprobado, modificado o desestimado el *memo-
randum*. En tal virtud, nuestra decisión sobre este extremo
sería prematura, tanto más cuanto que la ley expresamente
autoriza el recurso de apelación contra las resoluciones de las
cortes sobre impugnaciones hechas a *memorandums* de costas.

El recurso debe declararse sin lugar y confirmarse la sen-
tencia apelada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciado Wolf.

Los Jueces Asociados Sres. MacLeary y Aldrey, no inter-
vinieron en la resolución de este caso.