MARÍA TERESA OLIVERO, demandante y recurrida, *v.* AUTO-
RIDAD DE CARRETERAS, demandada y recurrente.

*Número:* R-76-252      *Resuelto:* 15 de mayo de 1978

302

*Edgar R. Martínez Gelpí* y *Adán L. Meléndez,* abogados de la recurrente; *Max Ramírez de Arellano,* abogado de la recurrida.

El Juez Asociado Señor Martín emitió la opinión del Tribunal.

El trasfondo de los derechos de la demandante es como sigue. En 1953 el Estado adquirió por expropiación de sus respectivos dueños todos los terrenos necesarios para la ampliación de la Carretera Estatal número 3. El solar donde radica la estructura objeto de este pleito formaba parte de los terrenos necesarios para dichas obras públicas pero ya había sido adquirido del Municipio de Loíza por el Estado antes de 1953. No fue hasta 1964 que la demandante adquirió de un tercero una casa de una planta de madera y zinc que radicaba en el solar mencionado al margen de la carretera número 3 que se proyectaba ampliar. Es de presumirse que la demandante sabía entonces o debió haber sabido de la propuesta ampliación de la carretera cuyos planes databan de más de once años antes. Esta no ofreció prueba alguna del derecho que podía asistirle para ocupar el referido solar, aparte de que demostró que había adquirido la estructura señalada de un dueño anterior. Sí sabemos que en algún momento entre la fecha de adquisición en 1964 y la fecha en que comenzaron las obras de ampliación en 1970, la demandante le añadió una segunda planta a la casa existente, y

la utilizaba como vivienda.(1) Si los daños reclamados se limitan a la primera planta presumimos que las obras no impidieron el uso de la estructura para vivienda. Es curioso que en el juicio la demandante manifestara que no sabía de quién era el solar donde radicaba la estructura, aunque admitió que no era de su propiedad. Las circunstancias indican sin embargo que ella sabía o debió haber sabido que cualquier derecho que pudiera tener sobre el uso de la propiedad estaba supeditado al derecho del Estado a efectuar las obras de ampliación. Mientras se realizaban las obras y se alteraba el nivel de la carretera con respecto al referido solar, se produjo una variación en el curso natural de las aguas que causó inundaciones en el solar del Estado donde radicaba la estructura de la demandante. No surge del expediente que se afectara la vivienda que ocupaba la demandante en la segunda planta de la estructura, pero el lodo que allí se formaba por las lluvias afectó el acceso al negocio dè barra restaurant que ocupaba como inquilino un tercero en la planta terrera. Este terminó desalojando el local, y por consiguiente descontinuando el pago del canon de arrendamiento. En el ínterin el Estado trató infructuosamente de corregir la situación mediante la instalación de tubería y tratando otros remedios correctivos. Como cuestión de hecho, cierto equipo y enseres de la demandante que se utilizaban en el negocio sufrieron daños que el tribunal de instancia estimó en $1,000.

La demandante instó una acción que tituló Daños y Perjuicios contra la Autoridad de Carreteras que incluía, pero sin limitarlo a ello: "la pérdida total del negocio que tenía en el edificio, pérdida de la plusvalía (*good will*) del negocio, depreciación del valor del edificio, pérdida de rentas, daños

---

(1) La exposición narrativa de la prueba revela que la demandante usa la segunda planta para vivienda. Declaró también que "no obtuvo el permiso de uso y la multaron." No sabemos si se refería al primero o segundo piso, pero tal situación arroja dudas sobre la legalidad de la construcción de la segunda planta o del uso de la planta terrera para negocio, o ambas cosas, y por tanto sobre su derecho a la utilización de la propiedad.

físicos del edificio y a cierto equipo y enseres que se encontraban en el mismo, y gastos de limpieza, que se estiman en una cantidad no menor de $200,000." En adición alegó que "las actuaciones de la demandada constituyen además una toma de la propiedad de la demandante sin el debido procedimiento de ley." Esta alegación de derecho va sin duda dirigida a la alegada pérdida de rentas del susodicho local de negocios. Las partes estipularon que el contratista había realizado la obra conforme a los planos y especificaciones del proyecto aprobado por la Autoridad de Carreteras, eliminándose así cualquier insinuación de negligencia como resultado de la construcción propiamente.

El tribunal de instancia determinó como cuestión de hecho que "debido a las condiciones actuales del terreno y a la falta de acceso al mismo la propiedad [el negocio] ya no sirve para los fines en que era utilizada." Por ende, impuso responsabilidad a la Autoridad por los daños y perjuicios ocasionados a la demandante, por tal concepto y le condenó a satisfacerle $7,650 por pérdida de rentas del negocio a razón de $150 mensuales hasta el día del juicio y $1,000 por los daños del equipo y enseres del negocio.

La Autoridad solicitó revisión de la sentencia. La demandante, por su parte, al no recurrir de la sentencia, abandonó su causa de acción en cuanto a los otros daños reclamados en la demanda, aceptando por tanto como compensación por sus daños los que el tribunal le adjudicara.

Un examen de las alegaciones revela que la demandante no consideró que el Estado se había incautado de su propiedad al quedar afectada la utilización de la planta terrera como consecuencia de las obras de construcción de la carretera. Tampoco surge que ése fuera el efecto, pero si lo hubiese sido, la reclamación a la cual ella hubiese tenido derecho fue satisfecha cuando, aún estando pendiente de resolución la reclamación de daños ante el tribunal de instancia, al instar la Autoridad de Carreteras una demanda de expropiación

sobre la estructura de la demandante y suscribir ambas un "Convenio", copia del cual aparece en autos, del que surge que las partes acordaron que ". . . la suma de $28,660.00 representa la justa y razonable compensación por la propiedad . . . ."

La referencia al mencionado Convenio surge de un escrito titulado "Moción Informativa" presentado por la Autoridad ante el tribunal de instancia, cuya eliminación fue solicitada por la demandante[2] alegando ser inmaterial a su acción de daños, ya que ésta estaba basada en pérdida de ingresos causada por actos u omisiones negligentes de la Autoridad y no por la incautación de la propiedad. Por la relevancia que cobra el contenido de dicha Moción Informativa ante la reclamación de la demandante en el presente caso, entendemos que debe tomarse conocimiento judicial de ambos escritos.

El "Convenio" suscrito por la Autoridad y la demandante, y aprobado por un funcionario de la primera, expone (1) que la demandante es dueña de la estructura de dos plantas a la que se refiere la demanda; (2) que la Autoridad requiere la propiedad para un proyecto público; (3) que las partes acuerdan que la suma de $28,660.00 representa la justa y razonable compensación por la propiedad mencionada y (4) que la cantidad especificada sería depositada por la Autoridad en el Tribunal Superior, Sala de Expropiaciones. Junto al antedicho "Convenio" aparece una fotocopia de un cheque expedido por la Autoridad a favor de la demandante por la suma acordada de $28,660.00.

En su escrito de eliminación la demandante admite que la adquisición por la Autoridad de la referida estructura de su propiedad "se efectuó bajo el poder de expropiación del Estado" y que "[E]l valor de la propiedad en sí no está en cuestión." La demandante no niega el contenido del Convenio sino por el contrario admite su veracidad.

---

[2] Pasados seis meses desde que se archivara en Autos la sentencia el tribunal de instancia ordenó la eliminación de ambas mociones.

■ El inicio por la Autoridad del procedimiento de expropiación y la consignación de la suma que las partes acordaron es la justa y razonable compensación por la totalidad de la estructura, tuvo el efecto de fundir en una sola esta acción, denominada daños y perjuicios, con la acción de expropiación. (3)

■ De todas maneras, es regla general que la terminación súbita de un arrendamiento con motivo de una expropiación a quien puede perjudicar es al arrendatario y no al dueño arrendador, en cuyo caso aquél—no éste—tendría derecho a ser compensado, pero solamente en la medida en que dicho arrendamiento menoscabe el valor total del inmueble. Tal compensación por el arrendamiento debe recobrarse de la suma que represente el valor total del título de dominio y no en adición a ella, es decir, se determina el valor del título de dominio y entonces se le deduce el valor del arrendamiento. De lo contrario habría una duplicación de compensaciones en lo que se refiere al gobierno. *Pueblo* v. *McCormick, Alcaide & Co.*, 78 D.P.R. 940 (1956). Esto es así porque un recurso de expropiación es un procedimiento *in rem*. "No va dirigido contra ningún demandado en particular, sino contra la propiedad propiamente dicha. Si bien el ejercicio del poder de expropiar extingue todos los derechos anteriores sobre la propiedad, el gobierno no expropia el interés que pueda tener ningún demandado en particular sobre la propiedad." Véanse *Pueblo* v. *632 Metros Cuadrados de Terreno*, 74 D.P.R. 961, 970 (1953); *Pueblo* v. *McCormick, Alcaide & Co.*, supra, pág. 945.

Por vía de excepción se ha sostenido la compensación por pérdida de arrendamiento a un dueño arrendador por un

---

(3) En algunas jurisdicciones estatales, pero no en Puerto Rico, la Constitución requiere la *previa* consignación de la justa compensación en casos de expropiación. La violación de dicha disposición constitucional en las jurisdicciones donde existe justifica daños en adición al justo valor de la propiedad. *City of Three Forks* v. *State Highway Comm.*, 480 P.2d 826 (Mont. 1971).

período anterior a la expropiación durante el cual estuvo impedido de arrendar una propiedad cuya expropiación era inminente pero que como cuestión de hecho no fue expropiada hasta cerca de tres años más tarde. *Luber* v. *Milwaukee County*, 177 N.W.2d 380 (Wis. 1970). Con esta decisión la Corte Suprema de Wisconsin se apartó de lo que había sido hasta entonces la norma en dicho estado y alteró sustancialmente el significado dado a la cláusula de "justa compensación" de la Constitución de Wisconsin. Ver Nota, 1971 Wis. L. Rev. 657, 659.

■ No podemos encontrar circunstancias extraordinarias con respecto al arrendamiento que justifiquen la concesión de una compensación adicional al justo valor en el mercado acordado por las partes sobre la propiedad. Tales circunstancias no surgen de las determinaciones de hecho formuladas por el tribunal recurrido. En *McCormick*, supra, pág. 958, expresamos que el Gobierno ". . . debe pagar únicamente por lo que expropia y no por las oportunidades que el dueño pueda perder como resultado de la expropiación . . . ." (Citando a Dolan, *Consequential Damages in Federal Condemnation*, 35 Va. L. Rev. 1059.)

■ En vista de lo expuesto es forzoso concluir que éste no es un caso donde tiene aplicación la doctrina de "expropiación inversa," bien fuere por la incautación física o por los perjuicios sufridos. Aun en ese tipo de expropiación los tribunales generalmente aplican las mismas normas y principios que rigen la acción de expropiación directa iniciada por el Estado. Véase *E.L.A.* v. *Northwestern Const., Inc.*, 103 D.P.R. 377, 383 (1975). Tampoco proceden los daños por la parte del equipo y enseres de la demandante por el efecto del agua. La Autoridad fue diligente en proveer ciertos remedios para evitar que las aguas irrumpieran en el local del negocio. Varios remedios fueron tratados. Desde que comenzaron las obras hasta que el inquilino desalojó el local transcurrieron varios meses. Es indudable que la demandante

pudo haber evitado los daños al equipo y enseres removiéndolos a un lugar seguro. No puede pues beneficiarse de su poca previsión.

*Se revocará la sentencia dictada por el tribunal de instancia que impuso daños contra la Autoridad demandada.*

El Juez Presidente Señor Trías Monge concurre con el resultado. El Juez Asociado Señor Irizarry Yunqué disintió con opinión.

—O—

Opinión disidente emitida por el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 15 de mayo de 1978

Para mayo del 1971, en que se comenzaron obras para la ampliación de la Avenida 65 de Infantería en su proyección por la carretera número 3, la demandante era dueña de una edificación de dos plantas radicada en terrenos del Estado Libre Asociado a orillas de dicha carretera. Dedicaba la planta alta a vivienda y el primer piso lo tenía arrendado para un negocio de barra y restaurante. La edificación quedaba a una distancia de 8 a 10 metros de la carretera. La carretera quedaba más alta que la edificación, de 2 a 3 pulgadas. Una acera separaba la edificación de la referida vía pública.

Al iniciarse las obras en virtud de planos aprobados por la Autoridad de Carreteras se movió gran cantidad de tierra que se amontonó frente a la casa, interrumpiéndose con ello el acceso a la propiedad de la demandante y perjudicándose seriamente el negocio en ella existente. La ampliación llevó el margen de la avenida a sólo 15 pies de la casa y su superficie se elevó a alrededor de metro y medio sobre el nivel anterior. Todo ello ocasionaba que las aguas de lluvia discurrieran hacia la casa, inundaran el terreno que la circunda y penetraran al primer piso llenándolo de fango y dañando muebles y existencias. Como consecuencia el primer piso

quedó inutilizado, produciéndose el cierre del negocio de barra y restaurante y la pérdida para la demandante de las rentas que percibía.

Ante la negativa de la Autoridad a compensarla, la demandante instó acción judicial en su contra. Alegó negligencia causante de daños y además la toma de su propiedad sin el debido proceso de ley. El tribunal de instancia falló a su favor y condenó a la Autoridad de Carreteras a pagarle $7,650.00 por las rentas dejadas de percibir y $1,000.00 por pérdida de equipo. La Autoridad ha recurrido y decidimos revisar. Habiéndose realizado las obras conforme a planos aprobados por la Autoridad de Carreteras, y no habiéndose establecido que ésta incurriera en culpa o negligencia, no procedía la demanda como una acción *ex delicto*. El Art. 488 del Código Civil(¹) en que basó su sentencia el tribunal de instancia tampoco es de aplicación. Sin embargo, la demandante alegó y probó hechos que justificaban una sentencia a su favor bajo la acción de expropiación inversa, cuyos alcances pasamos a exponer.

El Art. 488 del Código Civil establece una servidumbre legal que obliga al predio sirviente a recibir las aguas que naturalmente discurran desde el predio superior, y prohíbe al dueño del predio dominante hacer obras que la agraven, como también prohíbe al dueño del predio inferior a realizar obras que la impidan. Sin embargo, aquí no se puede invocar la existencia de una servidumbre bajo este artículo porque tanto el predio superior como el inferior pertenecen al mismo dueño, que es el Estado. (²) "La servidumbre es un gravamen

---

(¹) 31 L.P.R.A. sec. 1711, dispone:

"Los predios inferiores están sujetos a recibir las aguas que naturalmente y sin obra del hombre descienden de los predios superiores, así como la tierra o piedra que arrastran en su curso.

"Ni el dueño del predio inferior puede hacer obras que impidan esta servidumbre, ni el del superior obras que la agraven."

(²) Plano original del Proyecto de Obras Públicas, del 21 de abril de 1953 (*Exhibit* 3 de la demandada) y Certificado del Departamento de

impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño.", dice el Art. 465 del Código Civil, 31 L.P.R.A. sec. 1631. La demandante era dueña de la edificación enclavada en el predio inferior, mas no del predio.

A pesar de que no fue considerado por el tribunal de instancia ni se discute en los alegatos de las partes, de hecho la demandante invocó el derecho a la expropiación forzosa inversa cuando en su demanda alegó específicamente que las actuaciones de la demandada "constituyen además una toma de la propiedad sin el debido procedimiento de ley."

La figura jurídica conocida por expropiación forzosa inversa no es novel en esta jurisdicción. Véanse *E.L.A.* v. *Northwestern Const., Inc.*, 103 D.P.R. 377 (1975); *Planta de Cal Hicaco* v. *Tribunal Superior*, 103 D.P.R. 385 (1975); *Flamboyán Gardens* v. *Junta de Planificación*, 103 D.P.R. 884 (1975); *Heftler International, Inc.* v. *Junta de Planificación*, 99 D.P.R. 467 (1970). Tiene base constitucional en el derecho reconocido de todo ser humano, entre otros derechos fundamentales, al disfrute de la propiedad[3] y halla fundamento adicional en la Sec. 9 del Art. II de la Constitución, *infra*, en cuanto prohíbe que se tome o perjudique la propiedad privada para uso público sin que medie una justa compensación. Dijimos en *Heftler International, Inc.*, supra, pág. 474:

"La acción de 'expropiación inversa' tiene el próposito de servir de protección a los propietarios para que el Estado cumpla con las disposiciones constitucionales garantizando que

---

Transportación y Obras Públicas de 1ro. de noviembre de 1974 (*Exhibit* 10 de la demandada).

[3] Dice la Carta de Derechos en su Art. II, Sec. 7:

"Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo."

nadie será privado de su propiedad sin el debido procedimiento de ley y sin haber mediado compensación."

No hace falta una ley específica para que la acción de expropiación forzosa inversa pueda ser ejercitada. Esta acción, por emanar de derechos constitucionalmente reconocidos, es por su naturaleza auto ejercitable, como son auto ejercitables todos los derechos constitucionales. Véanse *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436, 440 (1975); *Cortés Portalatín* v. *Hau Colón*, 103 D.P.R. 734, 738 (1975); *Alberio Quiñones* v. *E.L.A.*, 90 D.P.R. 812, 816 (1964).

No puede tampoco aducirse en contra de su ejercicio en el caso ante nos que por no ser parte el Estado la acción resulta inoperante. La demandada en este caso—Autoridad de Carreteras—es "un cuerpo corporativo y político en forma de corporación pública e instrumentalidad gubernamental del Estado Libre Asociado"—9 L.P.R.A. sec. 2002—con poder para "[a]dquirir cualquier propiedad o interés sobre la misma en cualquier forma legal, incluyendo, sin que ello implique una limitación, la adquisición mediante compra, bien sea por acuerdo o *a través del ejercicio del poder de expropiación forzosa.*" 9 L.P.R.A. sec. 2004(i). (Énfasis nuestro.) Además, la Carta de Derechos limita por igual al Estado y a sus corporaciones públicas. Estas son el Estado tanto como lo es el Gobierno. Señalamos en *C.R.U.V.* v. *Peña Ubiles,* 95 D.P.R. 311, 316 (1967), en que se trataba, como aquí, de una corporación pública, que ésta está limitada por las disposiciones de la Constitución. Citamos de la opinión concurrente del Juez Douglas en *Thorpe* v. *Housing Authority*, 386 U.S. 670 (1967), la razón para ello: "Porque estamos tratando con un gobierno, y las actuaciones de un gobierno están siempre circunscritas por la Carta de Derechos y la Enmienda 14."

La jurisprudencia sentada por los tribunales estatales de última instancia reconoce la procedencia de la acción de expropiación forzosa inversa ante situaciones de hechos como la

aquí presente. Allá se la denomina *inverse condemnation.* Así, en *Kendry* v. *State Road Department,* 213 So.2d 23 (Florida, 1968), se resolvió que al ampliarse una carretera estatal y aumentarse su elevación y ocasionar con ello que las aguas pluviales fluyeran hacia los terrenos privados e inutilizaran las residencias que en ellos había se agravó la servidumbre legal existente a favor del Estado y ello constituyó una toma de la propiedad privada que daba derecho a sus propietarios, bajo la Constitución del Estado, a instar la acción de expropiación inversa. Véanse, además, sobre la procedencia de esta acción, *Masley* v. *City of Lorain,* 358 N.E.2d 596 (Ohio, 1976), y *Albers* v. *County of Los Angeles,* 398 P.2d 129 (Cal., 1965). Se resolvió en este último caso, frente a una disposición constitucional como la del Art. II, Sec. 9 de la nuestra, que el derecho del propietario a ejercitar dicha acción no depende de que el daño causado por la mejora pública sea o no previsible.

La acción de expropiación inversa, de raíces constitucionales como hemos señalado, no constituye una acción *ex delicto* ni es una acción *ex contractu.* Véase 3 Nichols, *On Eminent Domain,* 3ra. ed. 1974, sec. 8.1[4], pág. 18-15. Una acción meramente negligente o culposa no da lugar al ejercicio de la expropiación inversa. Barer, Comment: *Distinguishing Eminent Domain from Police Power and Tort,* 38 Wash. L. Rev. 607, 624 (1963). La acción por daños requiere la existencia de culpa o negligencia y relación causal entre ella y el daño. Se requiere un deber de previsibilidad que no se cumpla y que por ello se cause daño. *Torres Trumbull* v. *Pesquera,* 97 D.P.R. 338, 343–344 (1969); *Rivera* v. *Maryland Casualty Co.,* 96 D.P.R. 807, 810–811 (1968).

La procedencia de la acción de expropiación inversa no depende de que haya habido un acto u omisión culposo o negligente ni de la existencia de un deber de previsibilidad. Mandelker, *Inverse Condemnation: The Constitutional Limits of Public Responsibility,* 1966 Wis. L. Rev. 3, 32–38; *Albers* v.

*County of Los Angeles,* supra. Puede o no haberse actuado culposa o negligentemente y proceder la acción de expropiación inversa. Basta que el daño ocasionado a la propiedad privada sea consecuencia de una obra pública realizada según plànificada—Barer, *supra,* págs. 623–625; Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hastings L.J. 431, 438–440 (1969); *House* v. *Los Angeles County Flood Control Dist.,* 153 P.2d 950, 953–954 (1944); *Bauer* v. *Ventura County,* 289 P.2d 1, 7 (1955); *Clement* v. *State Reclamation Board,* 220 P.2d 897, 905 (1950)—pero el daño debe ser de tal naturaleza sustancial que equivalga a una toma de la propiedad o a un perjuicio que prive al dueño de su uso y disfrute. 2 Nichols, *supra,* sec. 6.1[1], págs. 6-8, 6-11, 6-12. Tal privación, a diferencia de la acción por daños, debe surgir de una condición que cause un daño permanente y no meras molestias o inconvenientes. Mandelker, *supra,* pág. 25; 2A Nichols, *On Eminent Domain* (ed. 1974), sec. 6.441, pág. 6-152. La obra pública debe, por supuesto, ser realizada por autoridad del Estado o de una agencia con poder para instar la acción de expropiación forzosa. Feder & Wieland, *Inverse Condemnation—A Viable Alternative,* 51 Denver L.J. 529, 533 (1974).

En resumen, procede la acción de expropiación inversa si concurren los siguientes requisitos:

(1) la realización de una obra pública conforme a planes adoptados por el Estado o por una agencia del Estado que tenga el poder de instar la acción de expropiación forzosa;

(2) la invasión física de una propiedad privada o de los derechos o intereses sobre ella durante la realización de la obra pública o como consecuencia de la misma; y

(3) que dicha invasión sea de tal naturaleza que equivalga a una toma de la propiedad, o la perjudique de tal manera que equivalga a una privación substancial y permanente de su uso y disfrute.

Los hechos ante nuestra consideración cumplen todos dichos requisitos y justifican que en el ejercicio de la acción

de expropiación inversa se cumpla el mandato constitucional de compensar a la demandante. Veamos cuál debe ser la compensación.

El precepto constitucional que da base al ejercicio de esta acción prohíbe que se *tome* o se *perjudique* la propiedad para uso público sin una justa compensación. La compensación a pagarse ha de depender, por tanto, de si ha habido una toma de la propiedad, o un perjuicio a la propiedad, o ambas cosas. Si la intervención del Estado o de su agencia o corporación pública que da margen al ejercicio de la expropiación inversa equivale a una toma de la propiedad, la compensación debe determinarse a base de su valor en el mercado en el momento en que la autoridad expropiante ocupa la propiedad. *Planta de Cal Hicaco* v. *Tribunal Superior*, 103 D.P.R. 385, 387 (1975); *E.L.A.* v. *Northwestern Const., Inc.*, 103 D.P.R. 377, 382 (1975). En este supuesto y para fines de la compensación, el efecto de la expropiación inversa es como si se tratara de una expropiación directa. Aplicaría por tanto la regla de que la compensación se determina a base del valor en el mercado de la propiedad, 32 L.P.R.A. sec. 2915, (4) cuando el Estado o dicha agencia ocupa físicamente la propiedad que es cuando de hecho ocurre la toma. *Planta de Cal Hicaco* v. *Tribunal Superior*, supra; *E.L.A.* v. *Northwestern Const., Inc.*, supra; *E.L.A.* v. *Fonalledas Córdova*, 84 D.P.R. 573 (1962); 4 Nichols, obra citada, secs. 12.2, 12.23, págs. 12-52, 12-98.

La compensación correspondiente a perjuicios a la propiedad ha de determinarse, cuando no ha habido una toma de la misma, a base de su depreciación, es decir, la diferencia en su valor como consecuencia del perjuicio. 4A Nichols, obra citada, sec. 14.1[1], págs. 14-19–14-21.

---

(4) En lo pertinente, dicha disposición es como sigue:

"En el caso de compra o expropiación forzosa de la propiedad particular para fines de utilidad pública o beneficio social, la indemnización deberá basarse en el valor razonable en el mercado de tal propiedad . . . ."

Aparte del valor de la propiedad, la ley contempla, como parte de la justa compensación, que se abonen intereses al propietario sobre la diferencia entre la cantidad consignada al instarse la acción por el Estado o la agencia expropiante, y la cantidad que el tribunal finalmente determine que es el justo valor de la propiedad. Así lo dispone la Sec. 5(a) de la Ley de Expropiaciones, 32 L.P.R.A. sec. 2907, en su segundo párrafo.(5) Esto es así porque conforme a la citada ley, al tiempo de instarse por la parte expropiante la declaración de adquisición viene obligada a depositar en el tribunal, para beneficio de quienes tengan derecho a ello, "la cantidad estimada como compensación" según especificada en la declaración, sin perjuicio de que el dueño y personas con interés en la propiedad expropiada puedan retirar lo consignado,

---

(5) Dicho segundo párrafo dice:

"Tan pronto se radique tal declaración de adquisición y entrega y se haga el depósito en la corte, para beneficio y uso de la persona o personas naturales o jurídicas que tengan derecho al mismo, de la cantidad estimada como compensación y especificada en la declaración, el título absoluto de dominio de dicha propiedad, o cualquier derecho o interés menor en la misma según quede especificado en la declaración, quedará investido en el Estado Libre Asociado de Puerto Rico o Gobierno Estadual, o en la agencia o instrumentalidad del Estado Libre Asociado de Puerto Rico que hubiere requerido la expropiación, o en el de la entidad demandante o peticionaria que no fuere el Estado Libre Asociado de Puerto Rico, y tal propiedad deberá considerarse como expropiada y adquirida para el uso del Estado Libre Asociado de Puerto Rico o Gobierno Estadual, o de la agencia o instrumentalidad gubernativa del Estado Libre Asociado de Puerto Rico que hubiere requerido la expropiación, o de la correspondiente Autoridad de Hogares, o del municipio en cuestión o del Gobierno de la Capital, según fuere el caso, y el derecho a justa compensación por la misma quedará investido en la persona o personas a quienes corresponda; y dicha compensación deberá determinarse y adjudicarse en dicho procedimiento, y decretarse por la sentencia que recaiga en el mismo, *debiendo la sentencia incluir como parte de la justa compensación concedida, intereses al tipo anual de seis (6) por ciento sobre la cantidad finalmente concedida como valor de la propiedad a contar desde la fecha de la adquisición, y desde dicha fecha hasta la fecha del pago;* pero los intereses no deberán concederse sobre aquella parte de dicha cantidad que haya sido depositada y pagada en la corte. Ninguna cantidad así depositada y pagada estará sujeta a cargo alguno por concepto de comisión, depósito o custodia." (Énfasis suplido.)

La Sec. 5(b), 32 L.P.R.A. sec. 2908, contiene una disposición repetitiva de la obligación al pagar dichos intereses.

aunque no estén conformes con que represente el justo valor de la propiedad, y litigar por la diferencia a que crean tener derecho. Véanse las Secs. 5(a) y 5(b) de la Ley, 32 L.P.R.A. secs. 2907 y 2908.

Aplicando estas medidas que, según se ha expresado, van dirigidas a garantizar una justa compensación, es razonable que cuando se ejercita la expropiación inversa, la sentencia que finalmente recaiga a favor del propietario actor disponga el pago de intereses sobre la cantidad que se adjudique como justo valor, computados desde la fecha en que fue efectiva la incautación de la propiedad, es decir, la fecha en que ocurrió la perturbación equivalente a una toma *de facto* de la propiedad, hasta la fecha en que se efectúe el pago.

En adición al valor de la propiedad, o su depreciación según fuere el caso, y los intereses, la jurisprudencia ha reconocido que ciertos daños incidentales a la expropiación— directa o invera—son también compensables. Así, en *Jacksonville Expressway Authority* v. *Henry G. Du Pree Co.*, 108 So.2d 289 (1958), para ejemplo, se compensó por gastos de mudanza. Y en *Luber* v. *Milwaukee County*, 177 N.W.2d 380 (1970), se compensó por rentas dejadas de ganar mientras estuvo pendiente el procedimiento de expropiación. Véanse el comentario *Compensation for Lost Rents*, 1971 Wis. L. Rev. 657, 661; 3 Nichols, sec. 8.6, pág. 44; 2 Nichols, sec. 6.39, pág. 6-122. En *City of Three Forks* v. *State Highway Commission*, 480 P.2d 826 (Montana, 1971) se justificó la concesión de tales daños, particularmente en un caso de expropiación inversa, a base de una disposición de la Constitución del Estado que requiere que se pague la justa compensación al dueño de la propiedad o se consigne en corte su importe antes de que la propiedad se tome.

En nuestra jurisdicción hemos reconocido el derecho a compensación por la depreciación resultante en el valor del remanente de una finca cuando parte de ella ha sido expropiada. *E.L.A.* v. *Fonalledas Córdova*, supra; *E.L.A.* v. *Bravo*,

79 D.P.R. 779 (1956); *Pueblo* v. *Sucn. Rabell,* 72 D.P.R. 574 (1951). En *Pueblo* v. *Soc. Agríc. Mario Mercado e Hijos,* 72 D.P.R. 792 (1951), reconocimos el derecho a compensación por el costo de remover maquinarias adheridas al inmueble expropiado. Véanse además, *Pueblo* v. *García,* 66 D.P.R. 504 (1946); *Municipio de Carolina* v. *Saldaña,* 17 D.P.R. 512 (1911); *Junta Escolar* v. *Saldaña,* 14 D.P.R. 348 (1908).[5]

En el caso ante nuestra consideración, como hemos visto, la compensación concedida por el tribunal de instancia, que no consideró la acción como una de expropiación inversa, se limitó a las rentas del arrendamiento, que estimó en $7,650.00, y $1,000.00 por pérdida de equipo. Es de notar que en un procedimiento aparte, estando pendiente la presente acción ante el tribunal de instancia, la Autoridad de Carreteras inició la acción de expropiación forzosa contra la aquí recurrida, que culminó en un convenio suscrito entre ambas partes mediante documento fechado el 17 de noviembre de 1975, que obra en autos. Se convino por las partes que la Autoridad depositaría en el Tribunal Superior, Sala de Expropiaciones, la cantidad de $28,660.00 como la "justa y razonable compensación por la propiedad antes descrita." La propiedad descrita en el documento es la estructura de dos plantas a que hemos hecho referencia. Veamos como todo ello afecta la disposición final del caso.

La concesión de cánones de arrendamiento no ganados como consecuencia de la expropiación no procede de ordinario cuando se insta la acción directa de expropiación forzosa.

---

[5] Nuestras más recientes decisiones en *Texaco, Inc.* v. *Srio. de Obras Públicas,* 85 D.P.R. 712 (1962) y *E.L.A.* v. *Rodríguez,* 103 D.P.R. 636 (1975), no constituyen un viraje en torno a estas doctrinas. En estos casos reconocimos el derecho a compensación por la privación de accesos, mas no cuando una obra pública obliga a variar éstos. Lo resuelto en estos casos está en consonancia con el principio expuesto en esta opinión de que meras inconveniencias o molestias no son compensables y que para que se justifique compensar, en una acción de expropiación inversa, el perjuicio a la propiedad ha de ser de tal naturaleza que equivalga a una privación del uso y disfrute de la propiedad.

*Pueblo* v. *McCormick, Alcaide & Co.*, 78 D.P.R. 940 (1956).
Aquí se trataba de un arrendamiento a término. Por excep-
ción, se ha reconocido el derecho a compensación por dichos
cánones cuando debido a la inminencia de una acción de ex-
propiación forzosa que no se materializó hasta cerca de tres
años más tarde, el dueño de la propiedad expropiada perdió
de ganar las rentas de un contrato de arrendamiento que no
fuera renovado por el arrendatario. *Luber* v. *Milwaukee
County*, supra. La situación ante nos es distinta. En primer
lugar, no se trataba aquí de un contrato a término y por
tanto la determinación de los cánones que la demandante dejó
de ganar es especulativa. En segundo lugar, hemos señalado
el derecho de la demandante a intereses sobre el justo valor
que su propiedad tenía al ocurrir la incautación de hecho.
Hemos señalado, además, que dichos intereses forman parte
de la justa compensación. Y aquí la demandante ya convino
en recibir $28,660 como "justa y razonable compensación"
por su propiedad, lo que necesariamente incluye tales inte-
reses.

Por otra parte, el convenio suscrito entre la demandante
y la Autoridad se refiere a la justa y razonable ·compensación
por la propiedad allí descrita, que es la casa de dos plantas.
No se menciona la pérdida de equipo, que el tribunal de ins-
tancia valoró en $1,000. La demandante tiene derecho a esta
partida, considerada como daños incidentales a la expropia-
ción.

Por las razones expresadas, y habiéndose acordado entre
las partes la justa y razonable compensación por la propie-
dad expropiada, modificaría la sentencia recurrida para re-
conocer como única cantidad que resta por pagar a la recu-
rrida los $1,000 por pérdida de equipo. Así modificada con-
firmaría la sentencia.