# 2002 DTA 82

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN, PANEL I

ADMINISTRACION DE TERRENOS DE PUERTO RICO
Apelante

v.

TEODORO GONZALEZ PIAZZA Y TROPICAL FERTILIZER CORP.
Apelados

Núm. KLAN-2001-00832

San Juan, Puerto Rico, a 27 de marzo de 2002

Panel integrado por su Presidente, la Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez González Rivera

## TEXTO COMPLETO DE LA SENTENCIA

En el presente recurso, la Administración de Terrenos de Puerto Rico (en adelante Administración) solicita la revisión y revocación de una sentencia dictada el 15 de junio de 2001 por el Tribunal de Primera de Instancia, Sala Superior de San Juan. Mediante la referida sentencia se declaró *"Con Lugar"* la demanda de expropiación forzosa a la inversa presentada por Teodoro González Piazza (en adelante señor González Piazza) y Tropical Fertilizer Corp. En su consecuencia, se condenó a la Administración pagar: (1) la suma de $241,000.00 y sus intereses; (2) el pago de interés sobre el valor de la propiedad $1,456,000.00; y (3) el pago de las contribuciones. Todas estas partidas se computarán desde el 5 de marzo de 1996 hasta el 17 de junio de 1998, fecha de radicación de la acción de expropiación forzosa. Ordenó, además, el traslado del caso para la adjudicación de la segunda causa de acción por daños, así como lo relativo a la causa de acción presentada por Inverdec, Inc.

### I

Los hechos a los que se contraen el recurso nos revelan lo siguiente:

*"El 5 de marzo de 1996, Teodoro González Piazza tenía vigente un contrato de opción de compraventa con Inverdec, Inc. Mediante el mismo, esta corporación adquiriría las propiedades numeradas: 607█ y 609█ de la Avenida Fernández Juncos en Santurce. El precio de compraventa acordado entre las partes era por la suma de $1,500,000.00. El adquirente, Inverdec, Inc., pretendía establecer un proyecto residencial y comercial en el lugar."*

A la referida fecha, Inverdec, Inc. había adelantado pagos parciales por la suma de $300,000.00 en virtud del acuerdo de opción de compraventa con la parte apelada. El cierre y otorgamiento de la escritura de compraventa estaba programado para llevarse acabo el 1 de julio de 1996. El señor González Piazza recibiría en el acto del otorgamiento de las escrituras $450,000.00, quedando pendiente el balance de $750,000.00 y sus correspondientes intereses.

Con el anterior trasfondo, el 5 de marzo de 1996, la Administración envió una carta al señor González Piazza en su capacidad personal y como presidente de Tropical Fertilizer Corp. █ Por ese medio le notificó el interés de la Administración de adquirir las dos propiedades en controversia. La Junta de Planificación, la Administración de Reglamentos y Permisos, e Inverdec, Inc. fueron notificados de la intención de la Administración.

Por ende, la notificación del 5 de marzo de 1996 tuvo el efecto de frustrar la compraventa que se iba a efectuar el 1 de julio de 1996. Así las cosas, el señor González Piazza le notificó a la Administración de los efectos que podría causarse de no realizarse la expropiación forzosa con diligencia. El licenciado William Cancel de la Administración indicó que ésta estaba decidida a adquirir las propiedades mediante expropiación forzosa, pero que la forma más rápida de materializar el pago era otorgando una escritura de compraventa mediante ·un procedimiento de expropiación forzosa amistosa, con un relevo de Inverdec, Inc. La

Administración acordó entonces, con la parte apelada, que procedería a la brevedad posible a la adquisición de las propiedades. Esta situación propició que no se pudieran pagar a los acreedores y restituir a Inverdec, Inc. los $300,000.00 que habían dado como parte de la opción de compraventa, más los intereses reclamados.

No empece los esfuerzos de las partes en culminar una expropiación forzosa amistosa o una compraventa en corto plazo, todas las gestiones resultaron infructuosas. Desalojados todos los inquilinos que ocupaban las propiedades, atendida los requerimientos de la Administración, acordada la valorización de ambas propiedades en la cantidad $1,545,000.00, la Administración se negó a reconocer la fecha del 5 de marzo de 1996 como la fecha de incautación o *"taking"* de las propiedades. Sostuvo que la misma se computaría a partir de la presentación de la petición de expropiación forzosa.

Así las cosas, el 12 de diciembre de 1997, el señor González Piazza y Tropical Fertilizer Corp. presentaron una acción de expropiación forzosa a la inversa. Solicitaron se ordenase a la Administración adquirir la propiedad por su justo valor de $1,545,000.00 más intereses, a partir de la fecha de intercambio. Solicitó, además, se le concediera $125,000.00 por perdidas y daños causados por la incautación de hecho realizada el 5 de marzo de 1996.

Por su parte, un año y ocho meses de haber enviado su carta de intención de adquirir las propiedades, el 17 de junio de 1998, la Administración presentó una petición de expropiación forzosa, según lo autoriza la Ley Orgánica de la Administración, Ley Núm. 13 de 16 de mayo de 1962, 23 L.P.R.A. sec. 311 *et. seq.*, y la Ley General de Expropiación Forzosa del 12 de marzo de 1903, 32 L.P.R.A. sec. 2901 *et. seq.*, según han sido enmendadas. La Administración consignó como justo valor de las propiedades la cantidad de $1,456.000.00. ∎

El señor González Piazza presentó su contestación a la demanda de expropiación forzosa. Levantó como defensas afirmativas que la incautación de las propiedades se realizó *de facto* el 5 de marzo de 1996, por lo que las contribuciones de la propiedad y el pago de interés sobre el valor de la expropiación le correspondían a la Administración a partir de esa fecha. Alegó, además, que no procedía el reclamo de gastos por demolición formulado por la Administración, por cuanto las propiedades incautadas estaban siendo utilizadas de acuerdo al uso más provechoso conforme a su zonificación.

Al contestar la demanda de expropiación forzosa a la inversa, la Administración negó los hechos esenciales de la demanda, en particular que la incautación hubiese ocurrido a partir del 5 de marzo de 1996. Alegó que en todo momento su intención fue la de adquirir por compraventa las propiedades y no realizar una expropiación forzosa. En su contestación, aceptó la existencia del contrato de compraventa entre el señor González Piazza e Inverdec, Inc., el haber exigido el desalojo de los inquilinos y que se había acordado la cantidad de $1,545,000.00 como valor de la propiedad hasta noviembre de 1997.

Mientras tanto, Inverdec, Inc. presentó una petición de intervención el 4 de diciembre de 1998. Reclamó que la incautación efectuada el 5 de marzo de 1996 por la Administración le causó daños. Alegó que el efecto que tuvo esta situación fue paralizar los procedimientos del proyecto *"Bay View Plaza"*, proyecto de vivienda y comercios que interesaba desarrollar en los solares. A ese momento estaban opcionadas más del cincuenta porciento (50%) de las unidades del proyecto. Se habían realizado gestiones administrativas por sus oficiales para lograr el éxito del proyecto. Por tales razones, la Administración debía ser obligada a pagar las siguientes sumas de dinero: $27,000.00 por concepto de dinero invertido en la aprobación del proyecto *"Bay View Plaza"* más los intereses aplicables, a computarse desde el 5 de marzo de 1996 hasta la fecha en que finalmente se satisfagan; intereses sobre los $300,000.00 dados como depósito en el contrato de opción de compraventa, computados desde el 5 de marzo de 1996 hasta el 26 de septiembre de 1998, fecha en que ese dinero le fue restituido; $125,000.00 por concepto de gastos administrativos incurridos en la tramitación de los permisos y pre-venta del proyecto; y una suma no menor de $25,000.00 por concepto de costas, gastos y honorarios de abogados; más cualquier otro pronunciamiento que en derecho procediera.

Seguido el trámite correspondiente, la Administración presentó una moción de sentencia sumaria. Fundamentó la misma, en que la única cuestión a resolver era si la carta del 5 de marzo de 1996 constituyó una incautación de hecho. El señor González Piazza presentó su oposición y solicitó a su vez se dictase sentencia sumaria a su favor, considerando la referida fecha como la de incautación de sus propiedades.

El 15 de junio de 2001, el foro apelado dictó la sentencia apelada. Inconforme con la misma, la Administración recurrió mediante el presente recurso. Invoca la comisión de dos errores: (1) al concluirse que la carta del 5 de marzo de 1996 constituyó una incautación de hecho de las propiedades en controversia; y (2) al concluirse que las propiedades estaban siendo utilizadas en su mejor uso de acuerdo a su zonificación, por lo que no procedía descontar los costos de demolición de las estructuras.

Evaluado los argumentos de las partes, a la luz del derecho aplicable, dictaminamos que es procedente confirmar la sentencia apelada.

## II

Es doctrina reiterada en nuestra jurisdicción que la Asamblea Legislativa puede establecer limitaciones al derecho de propiedad en beneficio del bienestar general. Ello es así, porque el disfrute de la propiedad, aunque de carácter fundamental, no es un derecho absoluto. *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *E.L.A. v. Márquez*, 93 D.P.R. 393 (1966). El Estado también tiene el poder de incautarse de una propiedad privada, siempre que sea para un fin público y mediando una justa compensación. Artículo II, sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art.II, sec. 9; *E.L.A. v. Rosso*, 95 D.P.R. 501 (1967).

La obligación del E.L.A. de pagar una justa compensación puede manifestarse de tres formas: (1) mediante el ejercicio directo del poder de dominio eminente a instar un recurso de expropiación; (2) por medio de su reglamentación; o (3) cuando ocurre una *"incautación de hecho"*, al afectar sustancialmente el uso de la propiedad físicamente. *Culebra Enterprises Corp. v. E.L.A., supra.*

Para los casos excepcionales de ocupación física, incautación de un derecho real o restricciones a la propiedad por vía de reglamentación sin haberse presentado una acción de expropiación, se ha instituido la acción de expropiación forzosa a la inversa. *Olivero v. Autoridad de Carreteras*, 107 D.P.R. 301 (1978).

En *E.L.A. v. Northwestern Const., Inc.*, 103 D.P.R. 377 (1975), el Tribunal Supremo explicó que se denomina acción de expropiación inversa cuando el dueño de la propiedad o derecho insta dicho recurso contra el Estado para obtener la justa compensación a que tiene derecho, por haber el Estado ocupado físicamente la propiedad o haberse incautado del derecho real sin previa consignación de la justa compensación. Los tribunales generalmente le aplican las mismas normas y principios que rigen la acción de expropiación forzosa iniciada por el Estado. Véase, *Olivero v. Autoridad de Carreteras, supra.*

## III

La fiel solución de este recurso nos exige dilucidar si el proceder de la Administración al enviar la carta del 5 de marzo de 1996, en la cual manifestó su interés en adquirir las propiedades descritas en la misma, constituyó o no una incautación de hecho de la propiedad o un ejercicio ilegal del poder del Estado.

Mediante la antedicha comunicación, la Administración manifestó su intención de adquirir las propiedades en controversia. Copia de la carta de la Administración fue enviada a la Junta de Planificación y a Inverdec, Inc., lo que es indicativo que tenia conocimiento del acuerdo de compraventa existente entre el señor González Piazza, Tropical Fertilizer e Inverdec, Inc. La declaración jurada del licenciado Tomás Céspedes, acompañada con la moción de sentencia sumaria y que no fue controvertida por la Administración, deja claramente establecido la intención de la Administración de adquirir las propiedades mediante expropiación forzosa.

Examinados cuidadosamente los autos de este caso, concluimos, al igual que lo hizo el foro de instancia, que los hechos incontrovertidos de este caso demuestran claramente que la comunicación del 5 de marzo de 1996 fue un acto del poder de expropiación del Estado. Desde esa fecha se privó sustancialmente a la parte apelada de todo uso efectivo de sus propiedades. Tal postura cobra fuerza cuando consideramos que se frustró el negocio de compraventa con Inverdec, Inc. Los documentos obrantes en autos demuestran que la parte apelada cumplió con las exigencias hechas por la Administración para que se obtuviese un relevo de Inverdec, Inc., con las cláusulas sobre condiciones ambientales, así como, el desalojo de todos los inquilinos que ocupaban las propiedades y pagaban renta. Todos estos actos iban dirigidos a la adquisición de las propiedades por parte del Estado.

Unidas las circunstancias que concurren en este caso, las mismas son suficientes para concluir que ocurrió una incautación de hecho a partir del 5 de marzo de 1996. En esa fecha, el Estado constituyó una clara interferencia sustancial con el derecho de propiedad de la parte apelada. En mérito de ello, concluimos que el foro de instancia no incurrió en error al considerar la fecha del 5 de marzo de 1996 como base para establecer la justa compensación a la que tenía derecho la parte apelada.

El segundo señalamiento de error de la Administración resulta ser uno inmeritorio. Aduce que las propiedades no estaban siendo utilizadas en su mejor uso de acuerdo a su zonificación, por lo que procedía descontar los costos de demolición de las estructuras. Argumenta que la conclusión de mejor uso encierra un análisis de reglamentos, leyes y otras circunstancias que componen y circundan las propiedades. Alega, además, que el mejor uso de una propiedad no puede estar basado únicamente en su zonificación. Sin embargo, no informa de ley, reglamento o aquellas circunstancias que demuestren su afirmación. Sabido es que un señalamiento de error que no es sustanciado, no puede servir de base para intervenir con la conclusión del Tribunal de Primera Instancia. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62 (1987).

Ante la ausencia de una demostración de que el foro de instancia hubiere incurrido en este error, debemos concluir que el uso que se le brindaba a las propiedades era el más adecuado de acuerdo a su zonificación.

En mérito de lo antes expuesto, ausente una demostración de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba, dictaminamos que es procedente confirmar la sentencia apelada.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 82**

**1.** Consta de 1,965.28 metros cuadrados.

**2.** Consta de 2,286.76 metros cuadrados.

**3.** El texto de la carta es como sigue:

*"[...]*

*Por este medio le informo el interés de la Administración de Terrenos de Puerto Rico en adquirir las propiedades que se describen en el epígrafe como parte de su programa de adquisición de terrenos.*

*Agradeceremos que autorice el acceso de los funcionarios, empleados o personal autorizado de esta Agencia a entrar a las propiedades de epígrafe para efectuar los estudios de mensura y valoración pertinentes.*

*Esperamos su respuesta dentro de los próximos diez (10) días a partir del recibo de esta comunicación.*

*[...]".*

**4.** La acción de expropiación forzosa y expropiación a la inversa fueron consolidados en el caso KAC-97-1291. El foro apelado retuvo jurisdicción sobre la demanda del señor González Piazza para considerar la acción por daños, una vez resuelto el caso de expropiación forzosa.